No. DA 06-0370

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 100

_____

IN THE MATTER OF G.M.,

      Appellant.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DI 06-33,
The Honorable Gregory R. Todd, Presiding Judge.

COUNSEL OF RECORD:

      For Appellant:

          Victoria Weaver and Terry Seiffert, Attorneys at Law, Billings, Montana

      For Respondent:

          Ryan Nordlund and Mark A. English, Deputy Yellowstone County
Attorneys, Billings, Montana

_____

Submitted on Briefs:  March 21, 2007

Decided:  April 24, 2007

Filed:

_____
                        Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     GM appeals two orders of the Thirteenth Judicial District Court, Yellowstone County, committing him to the Montana State Hospital for treatment of a mental disorder. We reverse.

¶2     We review the following issues on appeal:

¶3     Whether the District Court had subject matter jurisdiction to consider the State's June 2, 2006, petition for civil commitment?

¶4     Whether the District Court's statements of facts in its May 5, 2006, and June 9, 2006, orders of commitment sufficiently supported its determination that GM was suffering from a mental disorder and required commitment?

**FACTUAL AND PROCEDURAL HISTORY**

¶5     The Billings police responded to a complaint that GM had been yelling out of his apartment window in the early morning hours of April 27, 2006. GM claimed that he had been irritated with the "trash men [who] come by there every morning about five in the morning and . . . wake [him] up . . . ." The police placed GM in custody and transported him to the Deaconess Psychiatric Center (Center) in light of the fact that he had been "yelling and screaming out the window and being confused and acting bizarrely."

¶6     Admitting psychiatrist Dr. Robert McDermott (Dr. McDermott) examined GM and recommended on April 28, 2006, that the State file a petition for involuntary mental health commitment. The State filed a petition on May 1, 2006, asking the court to commit GM to a mental health facility for a period of no more than three months.

2

¶7 The court held a commitment hearing on May 5, 2006, where Dr. McDermott testified on behalf of the State, and GM testified on his own behalf. Dr. McDermott testified that GM had acted disordered, psychotic, and at one point had told Dr. McDermott that he would "kick his ass" if GM's attorney was not present. Dr. McDermott concluded that GM suffered from a mental disorder.

¶8 The court found that GM was "suffering from a mental disorder and requires commitment." The court ordered that GM be placed in the custody of the officials at the Montana State Hospital at Warm Springs (State Hospital) for a period not to exceed three months. GM appealed the court's commitment order on May 8, 2006. He discharged from the State Hospital later that month.

¶9 GM found himself back in the Center around June 1, 2006. The circumstances that brought GM to the Center are unclear in the record. The record indicates only that GM arrived at the Center in an ambulance and was placed in the care of Diane Goedde (Nurse Goedde), a family nurse practitioner at the Center. Nurse Goedde recommended on June 1, 2006, that the State file a petition for involuntary mental health commitment. Her recommendation noted, among other things, that GM had been "psychotic, agitated, confused" and had "threatened to hurt others," and that he had "numerous in-patient stays" at the Center and the State Hospital.

¶10 The State filed a petition on June 2, 2006, asking the court to commit GM to a mental health facility for a period of no more than three months. GM filed a motion to dismiss the petition on the grounds that the State had filed its petition under the same cause number as the court's May 5, 2006, order of commitment. He argued that his

appeal of the court's May 5, 2006, order of commitment had divested the court of subject matter jurisdiction over any matter filed under the same cause number.

¶11    The court denied GM's motion to dismiss and held a hearing on June 9, 2006. Nurse Goedde and Yellowstone County Deputy Sheriff Chris Romero (Officer Romero) testified on behalf of the State, and GM testified on behalf of himself. Nurse Goedde testified that GM was a threat to others and himself and that he was unable to care for himself due to his present mental state. Officer Romero testified that he had heard GM claim that he had not been getting his pain medication and that the pain was making him want to kill himself. The court found that the State had established beyond a reasonable medical certainty that GM was suffering from a mental disorder that required his commitment. The court ordered that GM be placed in the custody of the officials at the State Hospital for a period not to exceed three months. This appeal followed.

## STANDARD OF REVIEW

¶12    We review a trial court's findings of fact in an involuntary commitment case to determine whether, upon viewing the evidence in a light most favorable to the prevailing party, the findings are clearly erroneous. *In Re A.K.*, 2006 MT 166, ¶ 9, 332 Mont. 511, ¶ 9, 139 P.3d 849, ¶ 9.

## DISCUSSION

¶13    *Whether the District Court had subject matter jurisdiction to consider the State's June 2, 2006, petition for civil commitment?*

¶14    GM argues first that the District Court lacked subject matter jurisdiction over the State's June 2, 2006, petition for civil commitment in light of the fact that it was filed

4

under the same cause number as GM's May 5, 2006, commitment order pursuant to the Uniform Caseload Filing Standards (January 1, 2006) (available at http://www.courts.mt.gov/orders/dcstandards.pdf). He points to *McCormick v. McCormick*, 168 Mont. 136, 138, 541 P.2d 765, 766 (1975), for the proposition that an appeal "to this Court stays all proceedings in the district court, thereby removing jurisdiction from that court to proceed further in the matter." GM suggests that the Uniform Caseload Filing Standards "may have created a new class of 'all proceedings'" encompassing all petitions for civil commitment filed under the same cause number. GM argues that his appeal of the May 5, 2006, order of commitment divested the District Court of subject matter jurisdiction over the State's June 2, 2006, petition in light of the fact that both documents had been filed under the same cause number.

¶15 GM fails to note, however, that the Uniform Caseload Filing Standards "are intended *solely* for purposes of record-keeping within the office of the Clerk of Court." (Emphasis in original). Montana Uniform Caseload Filing Standards at 1. Nothing in these procedures suggests that a respondent's pending appeal of a single commitment order divests a district court of subject matter jurisdiction over any subsequent petitions filed under the same cause number.

¶16 GM also fails to notice the next line in *McCormick*, 168 Mont. at 138, 541 P.2d at 766, where this Court states that "'[i]t is familiar law that an appeal to this [C]ourt divests the district court of jurisdiction over the *order or judgment* from which the appeal is taken.'" (Emphasis added). GM appealed only from the court's May 5, 2006, order of

5

commitment, thus, his appeal divested the district court of jurisdiction only over the May 5, 2006, order.

¶17 *Whether the District Court's statements of facts in its May 5, 2006, and June 9, 2006, orders of commitment sufficiently supported its determination that GM was suffering from a mental disorder and required commitment?*

¶18 GM argues next that the court failed to provide "a detailed statement of the facts" to support its orders for commitment. The District Court's "Statement of Facts" supporting its May 5, 2006, order of commitment provides in its entirety as follows:

> 1. The petition initiating this proceeding was filed May 1, 2006, and the Respondent was duly served a copy of the petition for commitment, and was fully advised of his rights and the substantive effects of the petition by his court-appointed attorney.
>
> 2. Respondent voluntarily waived the initial appearance and hearing in this matter; the waiver of hearing, signed by Respondent, after being properly advised of his rights by his court-appointed attorney, is part of the court record and is hereby incorporated by reference.
>
> 3. On May 5, 2006, Respondent appeared in Court with Terry L. Seiffert, his court appointed attorney, for the evidentiary hearing. Based on testimony given and the recommendation of his treating physician, Dr. Robert McDermott, it was determined that Respondent would best be treated by placement in the Montana State Hospital.
>
> 4. Respondent is beyond a reasonable medical certainty suffering from a mental disorder as defined in Section 53-21-102, M.C.A.

This statement of facts is almost identical to the court's statement of facts supporting its June 9, 2006, order of commitment, except for the names of the witnesses and collateral procedural matters.

6

¶19 The trial court's order of commitment must contain "a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment." Section 53-21-127(8)(a), MCA; *In Re A.K.*, ¶ 12. We have held, in fact, that "[t]he statutes governing involuntary commitment are critically important due to the 'calamitous effect of a commitment . . . .'" *In Re A.K.*, ¶ 11. We also have "strongly cautioned trial courts to strictly comply with all relevant statutes." *In Re A.K.*, ¶ 11.

¶20 The State admits that the court failed to provide "detailed statement[s] of facts . . . ." supporting its May 5, 2006, and June 9, 2006, orders of commitment. The State points to our holding in *Matter of R.J.W.*, 226 Mont. 419, 424, 736 P.2d 110, 113 (1987), however, as support for its proposition that there is "sufficient detail in the record as a whole to affirm the District Court." This Court held in *R.J.W.* that the trial court's lack of detailed findings supporting its order of commitment were "harmless" to R.J.W. "[g]iven the detail in the record as a whole." *R.J.W.*, 226 Mont. at 424, 736 P.2d at 113.

¶21 The State argues that the court's lack of detailed findings here similarly are harmless to GM in light of sufficient factual detail in the record, including the testimony of Dr. McDermott in the May 5, 2006, hearing and the testimony of Nurse Goedde in the June 9, 2006, hearing. The State fails to note, however, that this Court emphasized in *R.J.W.* that "[f]uture findings of fact should more carefully detail the factual basis on which a finding of serious mental illness is premised." *R.J.W.*, 226 Mont. at 424, 736 P.2d at 113.

¶22 The District Court's findings failed to detail the factual basis of its determination that GM suffered from a mental disorder and required commitment. Section 53-21-127(8)(a), MCA, directs the court to provide a "detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment." The court's conclusory restatement of the statutory criteria and its vague reference to witness testimony do not constitute strict compliance with the statutory mandate. The District Court has failed to provide a detailed statement of facts to support its findings that GM was suffering from a mental disorder and that he required commitment. We conclude that the District Court's findings are clearly erroneous in light of these deficiencies. *In Re A.K.*, ¶ 32.

¶23 We reverse the District Court's May 5, 2006, and June 9, 2006, orders of commitment and direct the District Court to vacate the orders of commitment.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE