DA 10-0299

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 21

IN THE MATTER OF THE MENTAL HEALTH OF:

L.K.-S.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DI 07-002
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Robin A. Meguire, Attorney at Law; Great Falls, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General; Helena, Montana

            Joe Coble, Teton County Attorney; Choteau, Montana

                        Submitted on Briefs:  January 26, 2011

                                    Decided:  February 15, 2011

Filed:

                                    _____

                                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Respondent and Appellant L.K.-S. appeals from the Order of the Ninth Judicial District Court, involuntarily committing her to the Montana State Hospital (MSH). The sole issue on appeal is whether the District Court erred in committing L.K.-S. to MSH in violation of her right to a jury trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 L.K.-S. is a resident of Choteau, Montana, who suffers from paranoid schizophrenia. She has been involuntarily committed four times in the past, and many of the people involved in this case have had previous experience with her in similar proceedings.

¶3 On May 26, 2010, the State of Montana, through Teton County Attorney Joe Coble (Coble), filed a petition pursuant to §§ 53-21-121 and 53-21-129, MCA, for emergency detention of L.K.-S. and for her involuntary commitment to MSH. The State's petition set out over forty reported instances in which L.K.-S. acted in a manner evidencing a mental disorder and imminent threat of injury to herself or others resulting therefrom. The State's petition argued that the listed events demonstrated a "continuing escalation of events which create an emergency situation." The events included L.K.-S. trespassing onto property and yelling at residents, "barking" at children, causing numerous disturbances at public places, failing to care for her own basic hygiene, threatening to poison neighbors' pets, speaking with and "sensing the presence" of nonexistent persons, making U-turns on the highway and blocking both lanes of traffic,

2

and drinking and driving. The incidents all occurred between May 17 and May 25, 2010, after L.K.-S. allegedly stopped taking her prescribed medication.

¶4 Later that day, the District Court entered an order for emergency detention pursuant to § 53-21-122(2), MCA. The court found probable cause for the petition and that an emergency situation existed under § 53-21-129, MCA, "in that [L.K.-S.] presents a threat of bodily injury or death to either herself or others." The order directed that L.K.-S. be brought in front of the court to be read her rights. The order also appointed counsel through the Office of the Public Defender, appointed a statutory "friend" and "professional person," and instructed law enforcement to detain L.K.-S. at MSH pending further hearing or order, following her initial appearance before the court.

¶5 Following entry of the order, Teton County Sheriff's Deputies brought L.K.-S. to the Cascade County Detention Center. Using the Vision Net system, the Hon. John L. "Pete" Howard, Justice of the Peace for Teton County, informed L.K.-S. that the proceeding was a detention hearing on the State's petition, read aloud her rights under § 53-21-115, MCA, and notified L.K.-S. that she would be transported to MSH for purposes of having a professional person examine her. L.K.-S. was generally cooperative, but stated that she "object[ed] to this entire proceeding." She also claimed that the charges against her had been "trumped up" and refused to provide a corrected address after stating that the address on the petition was not her current address. She was then transported to MSH by law enforcement.

¶6 On the following day, May 27, L.K.-S. was examined at MSH by Richard Wagner (Wagner), her appointed professional person, in the presence of her appointed friend,

3

Dr. Martin Krautter (Krautter), and public defender, Bill Hunt (Hunt). Wagner concluded that L.K.-S. had quit taking her medications for schizophrenia and recommended that she be committed to "prevent further deterioration of her mental status."

¶7 On June 1, a hearing was held on the State's petition in the Ninth Judicial District Court before the Hon. Laurie McKinnon. Hunt and Coble were present in the courtroom. L.K.-S., Wagner, and Krautter were present via Vision Net from MSH. L.K.-S. immediately interrupted the proceedings and stated, "I am simply here to request an actual legal trial, in person, judge—excuse me, an in person jury trial." The court continued its attempt to discuss initial matters in the case with Hunt, but L.K.-S. again interjected, repeating her desire for a jury trial and objecting to numerous elements of the proceedings. The court admonished L.K.-S. to stop interrupting, stating "[i]f you keep interrupting me I'm going to have the video . . . muted so that you can't interrupt." L.K.-S. was undeterred. She again interrupted and stated that there was "no point in this proceeding," and eventually left the room.

¶8 With L.K.-S. not present, Coble said "[a]lright, let's make a record." He noted that L.K.-S. had requested a jury trial and stated that under § 53-21-119(1), MCA, the right can be waived if a proper record is made. At this point, L.K.-S. re-entered the room and continued being disruptive. The court warned L.K.-S. to stop interrupting and subsequently muted the system when L.K.-S. refused. Hunt asked Coble to continue, stating that Coble "was right in the middle of making a record on the waiver of a jury trial." Coble then outlined the requirements of § 53-21-119, MCA, relating to a waiver of the right to a jury trial and the right to be present during the hearing, explaining that the

4

statute "requires the concurrence of the Friend of the Respondent [Krautter] and the concurrence of the Professional Person [Wagner] . . . . [I]f Mr. Krautter and Mr. Wagner concur, the Court can find a waiver of the request for a jury trial."

¶9 Coble also stated that if L.K.-S. were to leave the room again, in order to validly waive her right to be present, the court would need to make a finding that her continued presence would adversely affect her mental condition and that an alternative location would not prevent the adverse effect. The court then asked Hunt for his position on the waiver of the jury trial. Hunt replied that he believed a jury trial "would be detrimental to [L.K.-S.'s] mental health and not result in any different outcome" and stated that he anticipated asking for a waiver of her presence in the hearing because it would be detrimental. The court inquired, consistent with § 53-21-119, MCA, whether Hunt believed that L.K.-S. was capable of making an "intentional and knowing decision with respect to indication of those jury trial rights." Hunt responded that based on his experience and his review of the reports, it was his belief that she was not capable of making such a decision.

¶10 The court then attempted to ask Wagner the same question. The transcript reveals a chaotic scene. In order to ascertain whether Wagner and Krautter concurred with the waiver of a jury trial, the court evidently took the Vision Net system off of the "mute" setting. L.K.-S.'s presence in the room, and continued interruptions, made it extremely difficult for any communication to occur between the court and those at MSH. The court asked Wagner three times whether he had "hear[d] the question," ostensibly inquiring if Wagner concurred with the question just posed to Hunt as to L.K.-S.'s capacity to make

5

an intentional decision regarding her jury trial rights. It is clear that Wagner did not. Krautter attempted to provide assistance, stating, "Rick, the judge is asking you if you heard that?" Wagner responded, "Yeah, I'm sorry, I can't hear you." At this point, Hunt requested that L.K.-S. be removed again, so that the record could be made without further interruption. The court attempted to ask Krautter for his consent to remove L.K.-S. from the room, but difficulties in communication persisted. Krautter could only respond, "Your Honor, I can't hear anything . . . " until L.K.-S. was removed from the room.

¶11 After L.K.-S. was removed, the court asked Krautter for his consent to waive L.K.-S.'s presence during the hearing, as mandated by § 53-21-119(2), MCA. He consented, as did Wagner. The hearing then progressed, with the State calling witnesses to testify to instances demonstrating L.K.-S.'s unstable mental condition. No further mention was made of L.K.-S.'s request for a jury trial. L.K.-S. did not return to the hearing.

¶12 On the day following the hearing, June 2, 2010, the court issued the Order for Confinement that is the subject of this appeal. The order contained the following Finding of Fact #3: "[u]pon the representation of Respondent's counsel, Respondent's Friend, and the concurrence of Professional Person Rick Wagner, the Court determined that the Respondent was not capable of making an intentional and knowing decision regarding her rights. Respondent's counsel thereby waived Respondent's right to a jury trial pursuant to 53-21-119(1), MCA." The order committed L.K.-S. to MSH for a period of 90 days. A Notice of Appeal was timely filed with this Court.

6

¶13 On appeal, L.K.-S. claims the District Court erred by not making a sufficient record to support its findings as to the waiver of her right to a jury trial. She asserts that the statutory requirements of § 53-21-119(1), MCA, were not followed by the court and that, as a result, the order committing her to MSH must be vacated. In addition to the claimed statutory violations, L.K.-S. also argues that her right to a jury trial under the Montana Constitution was violated. She does not challenge the merits of the underlying commitment proceedings or the waiver of her right to be physically present at the hearing.

## STANDARD OF REVIEW

¶14 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *In the Matter of T.S.D.*, 2005 MT 35, ¶ 13, 326 Mont. 82, 107 P.3d 481. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence or if, after a review of the entire record, we are left with the definite and firm conviction that a mistake has been made. *Id.*

## DISCUSSION

¶15 This case requires a close reading of the record in light of the statutory scheme governing involuntary commitment. We have emphasized the necessity of strict adherence to this statutory scheme, given the utmost importance of the rights at stake. *In the Matter of the Mental Health of C.R.C.*, 2004 MT 389, ¶ 16, 325 Mont. 133, 104 P.3d 1065. In recognition of the "calamitous effect of a commitment, including loss of liberty and damage to a person's reputation," we have described the "procedural safeguards" of

7

these statutes as "of critical importance." *In the Matter of the Mental Health of T.J.D.*, 2002 MT 24, ¶ 20, 308 Mont. 222, 41 P.3d 323 (internal citation and quotation marks omitted). We have further emphasized the duty of trial courts to "safeguard the due process rights of the individual involved at every stage of the proceeding." *In the Matter of the Mental Health of L.C.B.*, 253 Mont. 1, 7, 830 P.2d 1299, 1303 (1992).

¶16 At issue is whether L.K.-S.'s right to a jury trial was properly waived under § 53-21-119, MCA. Section 53-21-125, MCA, provides all persons subject to involuntary commitment with the right to a jury trial. Section 53-21-119, MCA, governs how this right may be legally waived. It provides:

> **53-21-119. Waiver of rights.** (1) A person may waive the person's rights, or if the person is not capable of making an intentional and knowing decision, these rights may be waived by the person's counsel and friend of respondent acting together if a record is made of the reasons for the waiver. The right to counsel may not be waived. The right to treatment provided for in this part may not be waived.
> (2) The right of the respondent to be physically present at a hearing may also be waived by the respondent's attorney and the friend of respondent with the concurrence of the professional person and the judge upon a finding supported by facts that:
> (a) the presence of the respondent at the hearing would be likely to seriously adversely affect the respondent's mental condition; and
> (b) an alternative location for the hearing in surroundings familiar to the respondent would not prevent the adverse effects on the respondent's mental condition.

¶17 We have recently had occasion to examine this statute in a case which coincidentally involved the same respondent as the present case. *In the Matter of the Mental Health of L.K.*, 2009 MT 366, 353 Mont. 246, 219 P.3d 1263. In that case, we reviewed a waiver of the respondent's right to be physically present at the hearing. The waiver was placed at issue when the respondent walked out of the hearing. The court

8

made clear, on the record, that she was free to return and participate at any time. We reversed the court's commitment order, however, after concluding that the record insufficiently demonstrated compliance with the required procedural hurdles.

¶18 In *In the Matter of L.K.*, we noted that under the plain language of § 53-21-119(1), MCA, if L.K. were not capable of "making an intentional and knowing decision," then her rights could be waived by her attorney and appointed friend, acting together, if a record were made of the reasons for the waiver. *Id.* at ¶ 17. Section 53-21-119(2), MCA, we observed, imposes additional requirements before the right to presence at the hearing may be waived: the concurrence of a professional person, and two necessary factual findings.

¶19 Proceeding element by element, we concluded that the record did not support the court's order. We first determined that the requirements under § 53-21-119(1), MCA, were not met, as there was "no record of a waiver made by L.K.'s attorney and friend acting together, and no record of any reasons for such a waiver . . . [t]herefore, there was an insufficient record of a waiver under § 53-21-119(1), MCA, of L.K.'s right to be present at the hearing." *Id.* at ¶¶ 17-18. Similarly, we determined that the court erred in conducting the hearing outside L.K.'s presence for failure to comply with the requirements of § 53-21-119(2), MCA. "There was no record that the appointed friend or professional person concurred with a waiver of L.K.'s right to be present, and there was no record of findings supported by facts as required by § 53-21-119(2)(a) and (b), MCA." *Id.* at ¶ 19.

9

¶20    *In the Matter of L.K.* and previous cases dealing with Montana's involuntary commitment statutes set a strict standard for determining waiver of the rights preserved by statute. Without factual findings necessary to each procedural requirement, supported by evidence in the record, the commitment order cannot stand.

¶21    As the District Court noted during the hearing, the requirements of §§ 53-21-119(1) and 53-21-119(2), MCA, are not co-extensive; the factual predicate for each subsection differs and the concurrence of a professional person is only required to waive the right to be present during a hearing under subsection (2). Under subsection (1), in order for the right to a jury trial to be waived, the record must demonstrate that both L.K.-S.'s attorney and friend concurred with the waiver, and together made a record of the reasons for this waiver independent of their waiver of her right to be present during the hearing.

¶22    After a thorough review of the record, we are compelled to set aside the commitment order here for failure to comply with these requirements. The District Court's Finding of Fact #3 is clearly erroneous as it is not supported by evidence on the record, and as a result, the legal conclusion that the right to a jury trial was validly waived is not correct. L.K.-S.'s attorney Hunt, who was physically present in the courtroom, represented to the court that she was not capable of making an intentional and knowing decision on the matter of a jury trial, and competently set forth his conclusion that waiver of a jury trial was in her best interests. The record is barren, however, of the necessary concurrence of L.K.-S.'s friend Krautter in the waiver of a jury trial. When asked directly for his reply to Hunt's conclusions, Krautter's response was, "Your Honor,

10

I can't hear anything." No additional testimony from Krautter is present on the jury trial waiver.

¶23 It is overwhelmingly evident from a review of the transcript that the District Court, the State's attorney, and counsel for L.K.-S. believed they had completed the necessary record. L.K.-S.'s own disruptive activities are the primary reason why the record was not developed in compliance with the statutory requirements. The Vision Net system was placed on mute to avoid further disruption, but the commotion evidently resulted in the judge and counsel being inaudible to Krautter and Wagner. After several further disruptions, the parties seemingly then lost their place in making the record for waiver of the right to a jury trial, as their attention turned to making the necessary record for waiver of the right to be physically present during the hearing.

¶24 We cannot know what, if anything, this transcript unintentionally omitted. The court reporter had an unenviable task transcribing a chaotic scene. We are constrained, however, to consider only the record before us, and we are not at liberty to make assumptions to fill in the blanks. Where L.K.-S. made adamantly clear her demand for a jury, the record must be equally clear that there was a valid waiver.

¶25 The State urges us to apply the doctrine of implied findings to the case at bar. The doctrine provides that where findings of fact are "general in terms, any findings not specifically made, but necessary to the [determination], are deemed to have been implied, if supported by the evidence." *State v. Wooster*, 2001 MT 4, ¶ 18, 304 Mont. 56, 16 P.3d 409 (quoting *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985)). Here, however, the court made the specific finding required by statute, but it

11

was not supported by any direct evidence in the record. The doctrine is thus facially inapplicable. A waiver of rights should not be presumed. *L.K.*, ¶ 19 (citing *State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1, 101 P.3d 288).

¶26 L.K.-S.'s confinement thus violated her right to a jury trial, as the strict requirements of § 53-21-119(1), MCA, were not met. We need not consider L.K.-S.'s argument that her constitutional right to a jury trial also was violated.

¶27 Accordingly, the order involuntarily committing L.K.-S. to MSH is reversed.

/S/ BETH BAKER

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE