

DA 11-0327

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 282N

IN THE MATTER OF

B.H.,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI 11-4
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Joslyn Hunt, Chief Appellate Defender, Eileen A. Larkin, Assistant
Appellate Defender, Helena, Montana

       For Appellee:

              Steve Bullock, Montana Attorney General, Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

              Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

                        Submitted on Briefs:  October 26, 2011

                                  Decided:  November 8, 2011

Filed:

                      _____
                               Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 B.H. was admitted to Montana State Hospital (MSH) for treatment of diagnosed mental illnesses, including schizophrenia. He was subsequently conditionally released to Dakota Place. B.H. violated the terms of his conditional release and the Fourth Judicial District Court ordered revocation of the conditional release. B.H. appeals the District Court's revocation order. We affirm.

**ISSUE**

¶3 Did the District Court err in revoking B.H.'s conditional release?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 B.H. is a 19-year-old male who has been treated for mental illness since age 6. On January 20, 2011, B.H. was taken to the emergency room of St. Patrick's Hospital for cutting himself, threatening suicide, being extremely agitated and experiencing hallucinations. He was evaluated by Marianne Smith, LCPC, a mental health professional at the hospital. On January 21, the State petitioned to commit B.H. over his family's growing concern that B.H. might harm himself or others. The petition was subsequently dismissed without prejudice when B.H. agreed to accept treatment on a

2

voluntary basis. B.H. was treated through the Western Montana Mental Health Center and placed at Dakota Place.

¶5 In mid-February, B.H. left Dakota Place without notifying the staff, broke into his mother's house, and threatened his mother with her chef's knife. He then left with the knife. He was found the following day outside city hall, cutting his neck, arm and leg. B.H. was taken again to the hospital and evaluated by LCPC Smith. Smith recommended B.H. be detained, evaluated and treated at MSH. The State filed its second Petition for Commitment and the District Court ordered B.H. to be evaluated, treated and detained at MSH. B.H. waived his right to a hearing and agreed that commitment was appropriate.

¶6 B.H.'s doctors recommended that B.H. be allowed to participate in community-based treatment where he would be required to comply with all medications and recommended treatment. The doctor also stated that should B.H. not comply with treatment in a community-based program or if he left the facility, B.H. should be committed to MSH. B.H. was placed in a community-based crisis center where, within 24 hours of admission, he left without permission. B.H.'s doctors and mental health professionals requested that B.H. be committed to MSH. The District Court so ordered. B.H. again waived his right to a hearing and stipulated to treatment. On March 3, 2011, the District Court ordered B.H. to "involuntary mental health treatment at the Montana State Hospital."

¶7 On April 12, 2011, B.H. was conditionally released to Dakota Place. While at Dakota Place, he refused to take prescribed medication. He subsequently left the facility without permission, stole his mother's car, and was picked up by the police and detained

at the Missoula County Detention Center where Tim Myers, a clinical social worker at Western Montana Mental Health Center, evaluated him. Based on Myers' evaluation, on April 29 the Missoula County Attorney petitioned for revocation of B.H.'s conditional release on the grounds that he violated several conditions of his release including, but not limited to, refusal to take medications as prescribed, destroying property and harming others. The petition noted that B.H.'s condition had deteriorated and he was suicidal.

¶8 The court held a hearing on May 2, 2011. Prior to the hearing, Myers evaluated B.H. a second time. Myers then testified at the hearing, reporting that B.H. had been suffering from auditory hallucinations since leaving MSH and reporting to Dakota Place. B.H. had told Myers during an evaluation that for awhile he was able to resist the voices telling him to run, but then he could no longer resist and fled Dakota Place. Myers noted that since B.H. violated the conditional release, B.H. displayed symptoms of poor judgment and lack of impulse control. At the close of the hearing, the District Court found that B.H. had violated his conditional release and that there was no less restrictive environment available to B.H. than MSH. The court subsequently issued a written Order Revoking Conditions of Release in which the court determined that B.H. had violated the conditions of his release, his mental health had deteriorated as a result of his violations, and he could no longer be treated at a less secure facility than MSH.

¶9 B.H. appeals arguing that the District Court did not comply with the requirements of § 53-21-197(1)(b), MCA.

**STANDARD OF REVIEW**

4

¶10 We review a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100.

**DISCUSSION**

¶11 B.H. states that the District Court's oral pronouncement at the end of the May 2 hearing differs from the written pronouncement; therefore, the oral pronouncement controls. He argues that the District Court's oral ruling failed to find by clear and convincing evidence that his violation of the terms of his conditional release caused a deterioration of his mental health condition as required by § 53-21-197, MCA. Section 53-21-197(1)(b), MCA, provides:

> **Hearing on rehospitalization petition -- revocation of conditional release**. (1) The court may order that the patient's conditional release status be revoked and that the patient be returned to the mental health facility from which the patient was conditionally released or be sent to another appropriate inpatient mental health facility if, after a hearing, the court finds by clear and convincing evidence that:
>
> . . .
>
> (b) the conditionally released patient has violated a condition of the release, that the violation has caused a deterioration of the patient's mental condition, and that as a result of this deterioration, the patient can no longer be appropriately served by outpatient care.

¶12 B.H. contends that Montana's civil commitment laws must be strictly followed and the District Court's failure to orally pronounce that B.H.'s mental condition had deteriorated since he violated the conditions of his release constitutes a failure to strictly follow § 53-21-197(1)(b), MCA.

¶13 We are not persuaded by B.H.'s assertion that the court's oral pronouncement must control and render a subsequent written pronouncement moot. Unlike the criminal

context in which we have consistently held that "if there is a conflict between the oral pronouncement of sentence and the subsequent written sentence, the oral pronouncement of sentence controls," (*State v. Rennaker*, 2007 MT 10, ¶ 48, 335 Mont. 274, 150 P.3d 960), we have not so instructed for civil commitments.

¶14    More to the point, despite the fact that the District Court did not expressly use the word "deterioration" in its oral pronouncement, there was nonetheless clear and convincing evidence that B.H.'s mental health had deteriorated since he fled Dakota Place for the second time.  Myers testified that B.H. told him during the prehearing evaluation that his auditory hallucinations were now "nearly constant."  Additionally, evidence of B.H.'s attitude toward medication and treatment appear to have significantly changed for the worse after B.H. left Dakota Place, based upon Myers' detention center and prehearing evaluations.  Lastly, Myer noted that B.H. was exercising poor judgment and impulse control after most recently fleeing Dakota Place.

¶15    We conclude the District Court's written pronouncement of revocation was in compliance with the applicable statute and the court's findings of fact were supported by the evidence.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.  The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶17    We affirm.

/S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT