DA 14-0560

FILED

March 22 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0560

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 72N

IN THE MATTER OF:

P.H.,

    Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DI-14-22
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Nick K. Brooke, Smith & Stephens, P.C., Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

    Eileen Joyce, Butte-Silver Bow County Attorney, Michael Clague, Deputy County Attorney, Butte, Montana

Submitted on Briefs: January 27, 2016

Decided: March 22, 2016

Filed:

                               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 This case concerns P.H., a transient woman in her late forties. On August 7, 2014, the Butte police received a call regarding a woman (P.H.) hiding in an alley. The police brought P.H. to the Western Montana Health Center, where she received emergency mental health services. Based on the recommendations arising from those services, the State filed a petition for involuntary commitment on August 8, 2014. On August 11, 2014, the District Court in Butte held a hearing to assess whether P.H. should be involuntarily committed. At the hearing, the State introduced the testimony of Michael Sawicki, ("Sawicki") a licensed clinical social worker and a mental health professional. P.H. also testified at the hearing. At the conclusion of the hearing, the District Court granted the State's petition for involuntarily commitment of P.H. to the Montana State Hospital for 90 days, and entered its Findings of Fact and Conclusions of Law on August 12, 2014. P.H. appeals. We affirm.

¶3 We review a district court's order for civil commitment to assess whether the findings of fact are clearly erroneous and whether its application of the law is correct. *In re Mental Health of L.K.-S.,* 2011 MT 21, ¶ 14, 359 Mont. 191, 247 P.3d 1100.

¶4     Involuntary civil commitment is a statutory procedure outlined in § 53-21-126, MCA.  Pursuant to that statute, the court must first determine whether the respondent is suffering from a mental disorder, and then assess whether the condition of the respondent requires commitment.  Section 53-21-126(1), MCA; *In re M.C.D.*, 2010 MT 15, ¶ 10, 355 Mont. 97, 225 P.3d 1214.  Section 53-21-126(1), MCA, outlines four categories for assessing the need for civil commitment:

> (a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;
> (b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;
> (c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and
> (d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of the respondent's mental condition to the point at which the respondent will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety. . . .

The court must establish facts and physical evidence beyond a reasonable doubt, and all other matters under a clear and convincing standard.  However, mental disorders must be proved to a reasonable medical certainty.  Section 53-21-126(2), MCA.  We have previously held that it is incumbent upon the courts to follow the strict statutory guidelines in cases of involuntary commitment, given the adverse effect such a procedure has on the respondent. *In re C.R.C.,* 2004 MT 389, ¶ 16, 325 Mont. 133, 104 P.3d 1065.

¶5     Here, P.H. argues on appeal that the District Court lacked sufficient evidence to conclude that she suffers from a mental disorder.  P.H. did not contest this issue at the

District Court. Indeed, she accepted that conclusion at the end of the hearing. Consequently, we decline to address that matter on appeal.

¶6 P.H. contends that the District Court lacked sufficient evidence as set out in the statute to conclude that she was unable to take care of her own needs and thereby commit her to the state hospital. The record shows that P.H. is homeless and has severe mental disorders. Her initial evaluation after she was provided emergency mental health services noted that she suffered from both physical and mental health issues. Prior to the hearing, Sawicki reviewed the limited records, conversed with P.H., and evaluated her mental and physical condition. At the hearing, Sawicki testified that P.H. suffered from "a very serious mental illness" which he diagnosed as schizoaffective disorder, bipolar type. She exhibited delusions, paranoia, and reality disorientation. Sawicki further asserted that P.H. did not appreciate her current predicament and consistently underestimated the gravity of her mental condition and physical and medical needs. He testified there is a risk she could decompensate because she is not on mental health medications: "[s]he'll become more and more psychotic, more and more delusional, more and more paranoid." Finally, Sawicki stated that he was seriously concerned for her well-being because "she's is easily victimized and vulnerable on the street." He indicated there were no available alternative treatments for her given her mental condition.

¶7 The District Court also heard testimony from P.H., which supported the evaluation from Sawicki. P.H. testified that she was wealthy and that her husband was on a secret mission and involved with the FBI, CIA, or Interpol. During her testimony she represented a deep immersion into an alternate reality in which other people are pursuing

4

her for financial purposes. She seemed to understand that her brain was cross-wired but categorically refused treatment that could help her.

¶8 Pursuant to § 56-21-126(1), MCA, a court may order commitment if it finds that because of a mental disorder, the respondent is substantially unable to provide for her own basic needs for food, clothing, shelter, health, or safety. P.H. has a basic need for treatment and although being homeless is not sufficient for commitment, being homeless with an inability to distinguish what is real from what is not raises concerns not just for her safety but also for her ability to care for her own basic mental health needs. Confronted with that record we cannot agree that the District Court was clearly erroneous.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, this case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶10 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

5