No. 01-212

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 24

IN THE MATTER OF THE MENTAL

HEALTH OF T.J.D.,

Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Kenneth R. Neill, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Carl B. Jensen, Public Defender's Office, Great Falls, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Jennifer Anders,

Assistant Attorney General, Helena, Montana

Brant Light, County Attorney; Marvin Anderson, Deputy

County Attorney, Great Falls, Montana

_____

Submitted on Briefs: July 19, 2001

Decided: February 12, 2002

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

1. ¶T.J.D. appeals from an order of the Eighth Judicial District Court, Cascade County, committing her to the Montana State Hospital for a period not to exceed 90 days and suspending the commitment upon conditions. We reverse.

2. ¶We re-state the issue on appeal as:

3. ¶Did the District Court err in relying on inadmissible hearsay within the doctor's report and, if so, was it harmless error?

4. ¶T.J.D. is a 42-year-old female who has been diagnosed as a paranoid schizophrenic, chronic and acute exacerbation. In November 2000, T.J.D. ceased taking medication prescribed for her illness and her mental health deteriorated. As a result, the Cascade County Attorney's Office filed a petition seeking to have T.J.D. committed to a mental health facility for a period not to exceed 90 days. The petition further requested that Dr. James Day perform a mental health evaluation and that the Cascade County Public Defender's office be appointed to represent T.J. D..

5. ¶T.J.D. was admitted to Benefis Healthcare in Great Falls on November 17, 2000, and was examined by Dr. Day, who had been treating her for several years. Dr. Day prepared a written report which documents a long history of schizophrenia, drug abuse, and poor compliance with treatment recommendations. The report further documented that T.J.D.'s live-in boyfriend, Arthur Kirkland, reported that she had struck him several times the previous week and had made threats to hurt him, including a mildly-veiled threat that she could "do something to him during the night." Kirkland also reported that T.J.D. left stove burners on without any recognition of possible danger and that she left lit cigarettes and matches around the house where they could cause a fire. The report also documented several previous violent episodes in T.J.D.'s past, one occurring in 1997 and another in 1983.

6. ¶A hearing on the State's petition was held on November 22, 2000. Dr. Day was the only witness. He testified that he had been treating T.J.D. for several years and that she had a history of paranoid schizophrenia, paranoid delusions and auditory hallucinations. He also testified that it was difficult to keep T.J.D. on her medication. Dr. Day testified that T.J.D. is seriously mentally ill and that there is evidence that she has been a danger "to her own health and safety over the last few weeks as a result of her mental disorder."

7. ¶Upon the State's recommendation, the District Court ordered T.J.D. committed to the Montana State Hospital for a period not to exceed 90 days, with the commitment suspended on the condition that T.J.D. immediately begin participation in mental health treatment as recommended by Dr. Day.

8. ¶T.J.D. subsequently filed an Application for a Writ of Supervisory Control, asking this Court to reverse the District Court on the ground that the court improperly relied on hearsay evidence when granting the State's request for commitment. This Court declined to grant the writ because, without a transcript, it was unclear whether

the District Court was proceeding under a mistake of law and because there were no circumstances warranting an extraordinary remedy. T.J.D. then filed this appeal of the final District Court judgment.

9. ¶Did the District Court err in relying on inadmissible hearsay within the doctor's report and, if so, was it harmless error?

10. ¶T.J.D. argues that the only evidence before the District Court that she was a threat to herself or others was Kirkland's statements which were included in Dr. Day's report. T.J.D. argues that these statements were inadmissible hearsay and it was error for the District Court to rely on them. She claims that the State could have called Kirkland as a witness and afforded her the right to cross-examine him.

11. ¶The State concedes that Kirkland's statements are inadmissible hearsay, but it notes that the report documents other incidents, from 1997 and 1983, in which T.J.D. displayed violent behavior. They argue that the fact that these incidents occurred several years ago is not fatal because the actions show a consistent pattern of behavior which will predictably reoccur if T.J.D. is not medicated.

12. ¶The procedures for committing a person who is mentally ill are found in Title 53, Chapter 21, Part 1, Mont. Code Ann. A district court must hold a formal hearing which is limited to a determination of "whether or not the respondent is suffering from a mental disorder and requires commitment." Section 53-21-126(1), MCA. If the court finds that the person is suffering from a mental disorder, it must then consider whether commitment is necessary. In making that determination, the court must consider:

(a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;

(b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;

(c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and

(d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of the respondent's mental condition to the point at which the respondent will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety. Predictability may be established by the respondent's relevant

medical history.

Section 53-21-126(1), MCA.

1. ¶The standard of proof at the hearing is beyond a reasonable doubt with respect to any physical facts or evidence and clear and convincing evidence as to all other matters. Section 53-21-126(2), MCA. The respondent's mental disorder must be proved to a reasonable medical certainty. Imminent threat of self-inflicted injury or injury to others must be proven by overt acts or omissions, sufficiently recent in time as to be material and relevant to the respondent's present condition. Section 53-21-126(2), MCA.

2. ¶The professional person appointed by the court must be present for the hearing and subject to cross-examination. Section 53-21-126(3), MCA. The written report of the professional person indicating the diagnosis "may be attached to the petition, but any matter otherwise inadmissible, such as hearsay matter, is not admissible merely because it is contained in the report." Section 53-21-126(3), MCA.

3. ¶In this case, the District Court found that "Respondent has engaged in continuing behavior that threatens others and endangers the community; the behavior is consistent with mental illness; and, there is no evidence to indicate the behavior will change. . . . Involuntary commitment of the Respondent is necessary to protect the Respondent and the general public and to facilitate effective treatment of Respondent's serious mental illness."

4. ¶Dr. Day was the only witness at the hearing, and his report is the only evidence in the record. Kirkland's statements in Dr. Day's report are the only evidence in the record that the court could have relied on to find that "there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions." Section 53-21-126(1)(c), MCA. The State concedes that these statements are inadmissible hearsay, and we agree.

5. ¶We disagree, however, with the State's contention that T.J.D.'s acts from 1997 and 1983 can be relied on for support of T.J.D.'s commitment in 2000. The statutes require either "imminent threat" of injury to herself or others or a demonstration by "recent acts or omissions" that if untreated, respondent's condition will deteriorate to the point that she will become a danger to herself or others. T.J.D.'s acts from 1997 and 1983 are not sufficiently recent and do not pose an imminent threat.

6. ¶We hold that the District Court erroneously relied on inadmissible hearsay in Dr. Day's report to support its finding that T.J.D. required commitment.

7. ¶The State proposes that this Court affirm T.J.D.'s commitment by applying the harmless error doctrine to the District Court's Order in this case. The State argues that, because T.J.D.'s commitment to the State Hospital was suspended on conditions, she suffered no harmful effects from the commitment.

8. ¶This Court has repeatedly stated that "Montana's civil commitment laws are to be strictly followed. The procedural safeguards contained in those laws are of critical importance because of the 'calamitous effect of a commitment,' including loss of liberty and damage to a person's reputation." *In Matter of R.M.* (1995), 270 Mont. 40, 44, 889 P.2d 1201, 1204 (citations omitted).

9. ¶Although T.J.D.'s commitment was suspended, the condition upon which it was suspended was that she participate in "inpatient placement, prescription medicines and therapy as recommended by Dr. James Day and other treating physicians." Thus, her liberty was restricted, albeit not as restricted as it would have been had she been placed in the State Hospital. Additionally, the stigma involved in a civil commitment remains. Therefore, we decline to apply the harmless error doctrine to this case.

10. ¶The commitment is reversed.


/S/ W. WILLIAM LEAPHART

We concur:



/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JIM RICE