DA 09-0560

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 76

IN THE MATTER OF THE MENTAL HEALTH OF:

L.R.,

      Respondent and Appellant.

APPEAL FROM:     District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DI 09-04
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Elizabeth Cunningham Thomas, Attorney at Law, Missoula, Montana

      For Appellee:

      Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General; Helena, Montana

      Lewis K. Smith, Powell County Attorney, Deer Lodge, Montana

Submitted on Briefs: March 3, 2010

Decided: April 13, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     The Third Judicial District Court, Powell County, ordered L.R. involuntarily committed for ninety days after she was held in an emergency detention. L.R. raises the following issues on appeal:

¶2     Issue 1: Were L.R.'s statutory rights violated when she was involuntarily medicated prior to her initial appearance?

¶3     Issue 2: Did the District Court's findings of fact lack sufficient detail as required by § 53-21-127(8)(a), MCA?

¶4     Issue 3: Did the District Court err in committing L.R. because she could not provide for her own basic needs without clear and convincing evidence?

## BACKGROUND

¶5     L.R.'s involuntary commitment arises out of a series of interactions with authorities in August 2009. On August 3, the Powell County sheriff's office responded to a call from L.R.'s daughter stating that L.R. was lying in the yard and not moving. When they arrived, L.R. was fine. Two days later, Undersheriff Mike Grey responded to a 911 call from L.R. who reported a tree was on fire. When he arrived, no tree was on fire. The next day, Grey responded to the Town Pump station where L.R. had taken a pack of cigarettes. Before Grey took L.R. into custody, L.R. attempted to flush some of her clothes down the toilet. L.R. resisted arrest and referred to Grey as the devil and the President of the United States.

¶6     Rick Wagner, a mental health professional, evaluated L.R. when she arrived at the jail. He recommended an emergency detention for L.R. at the Montana State Hospital

because she could not make reasonable and safe decisions for herself. The Montana State Hospital admitted L.R. on the evening of August 6 and medicated her involuntarily that evening and the next day. L.R. was reported as being aggressive, intrusive, and volatile during her emergency detention. On August 7, the State filed a Petition for Involuntary Commitment and she attended her initial appearance later that day.

¶7 Prior to her hearing on the petition, L.R. was evaluated by a certified mental health professional, G. Michael Sawicki. Sawicki concluded that L.R. exhibited a hypomanic bipolar disorder, manifested argumentativeness, incessantly talked, and persistently spoke off topic. He said L.R. resisted treatment, opposed medication, and denied her current mental state. Although she was marginally able to provide for her basic needs, Sawicki opined that it was foreseeable that within a week or two that her mania would worsen and she would be unable to meet those needs. He concluded L.R. was a danger to herself or others and no other less restrictive option than involuntary commitment would meet L.R.'s needs.

¶8 L.R.'s hearing before the District Court was held on August 11. L.R. was present with her attorney and a court-appointed friend. After hearing testimony from Sawicki and Grey, the District Court determined that L.R.'s bipolar disorder led to her being substantially unable to provide for her basic needs and issued an order committing her to the Montana State Hospital for ninety days with authorization to administer medication.

¶9 On appeal, L.R. claims her statutory rights were violated because she was administered medication involuntarily prior to her initial appearance. She also contends that the District Court findings lacked sufficient detail to support a finding of commitment and, in

3

the alternative, that the court relied on insufficient evidence to determine she should be involuntarily committed.

¶10 The State responds that § 53-21-129, MCA, applies to L.R.'s case and allows a medical health professional to treat a person with medication who is being detained in an emergency. It also asserts that the court's findings that L.R. had a mental disorder and was substantially unable to provide for her own basic needs of food, clothing, shelter, health, or safety were specific and supported by substantial credible evidence.

## STANDARD OF REVIEW

¶11 We review whether a district court met statutory requirements de novo because such review is a question of law. *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662.

¶12 We review a trial court's findings of fact in a mental health commitment as to whether they are clearly erroneous. A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the district court has misapprehended the effect of the evidence or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Additionally, evidence is viewed in the light most favorable to the prevailing party when determining whether substantial credible evidence supports a district court's findings. *In re Mental Health of A.S.B.*, 2008 MT 82, ¶¶ 16-17, 342 Mont. 169, 180 P.3d 625.

## DISCUSSION

4

¶13 *Issue 1: Were L.R.'s statutory rights violated when she was involuntarily medicated prior to her initial appearance?*

¶14 L.R. claims her statutory rights were violated because she was administered medication involuntarily prior to her initial appearance and she has the right to refuse medication 24 hours before a hearing under § 53-21-115(11), MCA. The State responds that L.R. was detained in an emergency situation, thus § 53-21-129(2), MCA, applies, and the medication was part of the treatment and administered appropriately.

¶15 District courts must strictly adhere to statutes in involuntary commitment cases because they involve a loss of liberty. *In re J.D.L.*, 2008 MT 445, ¶ 8, 348 Mont. 1, 199 P.3d 805. Section 53-21-115, MCA, enumerates certain rights for any person who is involuntarily detained or has a petition for commitment filed against them. Among those rights is the right to refuse non-lifesaving medication for up to 24 hours before any hearing. Section 53-21-115(11), MCA. On the other hand, a peace officer may take a person who appears to have a mental disorder into custody for an evaluation by a professional if he believes them to be a danger to themselves or others. Section 53-21-129(1), MCA. If the professional agrees that the person in custody poses a danger and an emergency situation exists, "then the person may be detained and treated until the next regular business day." Section 53-21-129(2), MCA. At that time, the professional either releases the detained person or files findings with the county attorney who, if probable cause exists, files a petition for commitment. *Id*.

¶16 These statutes are inconsistent because treatment for a person in an emergency situation under § 53-21-129(2), MCA, may include medication, and the time period for such

5

treatment could overlap with the 24 hour period a person may refuse medication under § 53-21-115(11), MCA. "[W]hen a general statute and a specific statute are inconsistent, the specific statute governs, so that a specific legislative directive will control over an inconsistent general provision." *Mercury Marine v. Monty's Enterprises, Inc.*, 270 Mont. 413, 418, 892 P.2d 568, 571 (1995). Thus, because § 53-21-115(11), MCA, applies to all petitions for involuntary commitment and § 53-21-129, MCA, more specifically applies to emergency situations in which a petition may be filed, we conclude that § 53-21-129, MCA, applies to L.R.'s initial detention.

¶17 Here, a mental health professional determined that an emergency situation existed and recommended L.R. be detained. According to § 53-21-129(2), MCA, the Montana State Hospital was permitted to treat L.R. until the next business day. The mental health professionals determined that medication was an appropriate treatment under these circumstances, and we will not second-guess their professional judgment. Because the medication was administered before the next business day, L.R.'s rights were not violated.

¶18 *Issue 2: Did the District Court's findings of fact lack sufficient detail and substantial evidence to support a finding of commitment?*

¶19 L.R. contends that the District Court's findings lacked sufficient detail to support a finding of commitment under § 53-21-127(8)(a), MCA. She asserts that the District Court's findings are similar to *In re E.P.B.*, ¶ 13, where we held that the court's detailed statement under § 52-21-127(8)(a), MCA, was not specific enough to support a commitment.

6

¶20     If the district court determines after a petition for involuntary commitment hearing that commitment is necessary under § 53-21-126, MCA, it must make detailed findings of fact that are enumerated in § 53-21-127(8)(a)-(h), MCA. L.R. specifically complains that the District Court did not make "a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment." Section 53-21-127(8)(a), MCA.

¶21     Based on the testimony of Sawicki and Grey, the District Court made the following findings of fact:

> 1.  That [L.R.] suffers from mental illness identified as a bi-polar disorder in a [sic] acute manic phase.
>
> 2.  That [L.R.]'s mental illness is serious in that it renders her unable to make rational decisions or to care for or protect herself, and in that regard the Court finds that she is substantially unable to care for herself by reason of her mental illness. She also has paranoid and grandiose thoughts and refuses to take her medications. She has shown she has extreme religious ideation, and is suspicious of those who are trying to help her.

Based on these findings, the court made its appropriate conclusions of law and ordered L.R. committed to the Montana State Hospital and authorized involuntary medications.

¶22     *In re E.P.B.* is distinguishable from this case. Reading from an order prepared by the State before the hearing, the court simply reiterated that "Fisher, the professional person . . . testified that . . . the Respondent suffers from a mental disorder requiring commitment . . . ." *In re E.P.B.*, ¶ 10. Based on this finding, the court concluded that E.P.B. "presently suffers from a serious mental illness requiring commitment . . . ." *Id.*

7

¶23 In this case, the District Court found L.R. was paranoid, had grandiose thoughts, showed extreme religious ideation, and was suspicious of those trying to help her. These facts supported the court's finding that L.R. suffered from a bipolar disorder in an acute manic phase. The District Court's finding regarding L.R.'s mental illness satisfies § 53-21-127(8)(a), MCA.

¶24 *Issue 3: Did the District Court err in committing L.R. because she could not provide for her own basic needs without clear and convincing evidence?*

¶25 L.R. contends that the evidence supporting the District Court's conclusion that she was unable to provide for her needs was not clear and convincing. Specifically, L.R. asserts that the witnesses who testified at the hearing did not provide specific details about why she could not provide for her own basic needs of food, clothing, shelter, health, or safety.

¶26 The District Court must make two determinations before committing an individual pursuant to a petition for an involuntary commitment. First, the District Court must decide that the respondent is suffering from a mental disorder. Section 53-21-126(1), MCA. This determination must be proved to a reasonable medical certainty. Section 53-21-126(2), MCA. Second, if the District Court determined the individual suffers from a mental disorder, it must determine if that individual requires commitment. Section 53-21-126(1), MCA. To determine whether the respondent requires commitment, the court must consider a number of things, one of which is whether the respondent, because of a mental disorder, is substantially unable to provide for her own basic needs of food, clothing, shelter, health, or safety. Section 53-21-126(1)(a), MCA. The standard of proof for this determination is

8

bifurcated. With respect to any physical facts or evidence, the standard is beyond a reasonable doubt. All other matters must be proven by clear and convincing evidence. Section 53-21-126(2), MCA.

¶27 The District Court found that L.R. was "unable to make rational decisions to care for or protect herself, and in that regard the Court finds that she is substantially unable to care for herself by reason of her mental illness." The court then concluded that clear and convincing evidence showed that L.R. was substantially unable to provide for her own basic needs.

¶28 Sawicki, the mental health professional, testified that L.R.'s illness led her to believe she did not need medication, did not suffer from a mental illness, and did not need any treatment. Sawicki further opined that, while she was marginally able to provide for her basic needs at the present time, it was foreseeable that her mental illness would deteriorate until something dangerous happened and she would not be able to provide for any of her basic needs. In addition to Sawicki's testimony, Wagner's report stated that L.R. was "unable to make reasonable and safe decisions for herself."

¶29 We conclude that clear and convincing evidence supports the District Court's determination that L.R. should be committed because she could not provide for her own basic needs.

**CONCLUSION**

¶30 L.R.'s statutory rights under § 53-21-126(11), MCA, were not violated because she was detained in an emergency situation, thus § 53-21-129, MCA, applied and the medication

9

was administered appropriately. In addition, the District Court's findings of fact provided sufficient detail to satisfy the requirements of § 53-21-127(8)(a), MCA. Finally, clear and convincing evidence supported the court's determination that L.R. could not provide for her own basic needs.

¶31    Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE