

DA 11-0148

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 285

IN THE MATTER OF L.L.A.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DI 11-05
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Lisa S. Korchinski, Assistant
            Appellate Defender; Helena, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
            Attorney General; Joshua Van Swearingen, Legal Intern; Helena, Montana

            William Fulbright, Ravalli County Attorney; Angela Wetzsteon, Deputy
            County Attorney; Hamilton, Montana

Submitted on Briefs:  September 28, 2011

Decided:  November 15, 2011

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Respondent and Appellant L.L.A. appeals the Order of the Twenty-First Judicial District Court, involuntarily committing her to the Montana State Hospital (MSH). We find the following issue dispositive:

¶2     *Whether the District Court erred by failing to provide a detailed statement of the facts upon which it found L.L.A. to be suffering from a mental disorder and requiring commitment.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On February 14, 2011, the State of Montana petitioned, pursuant to § 53-21-121, MCA, for L.L.A.'s involuntary commitment to MSH. The State's petition recounted information from reports submitted by certified mental health professionals Carleen Grussling and Fred Huskey, describing several instances of L.L.A.'s bizarre behavior. These events included L.L.A. swinging a frying pan at her father's groin because she believed he was "raping her through the air waves," burning kitchen chairs and starting clothes on fire in the bathtub due to "bio-terrorism," throwing wine on her parents and the walls of their home to "baptize" them, and claiming her mother and father were "imposters" or "evil twins" of her parents. Both Grussling and Huskey were of the opinion that L.L.A. suffered from the mental disorder of Schizophrenia, Paranoid Type, and recommended she be committed to MSH.

¶4     On February 17, 2011, the District Court held a hearing on the petition. L.L.A.'s father testified and related the events stated in the petition along with other information raising concern about her mental health. Huskey, who had reviewed L.L.A.'s clinical

2

history and examined her before the hearing, testified that her responses during the evaluation suggested paranoid delusions and offered implausible explanations for her behavior. For example, L.L.A. believed a former classmate and his family lived underneath her family's home. L.L.A. gathered a "survival packet" of supplies for them, including lit candles, and threw it underneath the house. Huskey diagnosed L.L.A. with a Psychotic Disorder NOS (Not Otherwise Specified), noting the need to rule out Schizophrenia and Bipolar Disorder because "there may be indications of the possibility, but we need more information and more observation[.]" L.L.A. told Huskey and testified at the hearing that she did not believe she was mentally ill.

¶5 At the conclusion of the hearing, the District Court orally made brief findings and pronounced L.L.A. would be committed to MSH for a period not to exceed 90 days. The State then indicated it would prepare a commitment order and have it ready for the court in "[l]ess than ten minutes." The District Court's written order contained seven findings of fact:

1. Respondent has been advised of Respondent's rights and appropriate notices have been given as required by law.

2. Respondent suffers from mental disorders as defined by § 53-21-102(9), M.C.A., specifically diagnosed as Psychotic Disorder NOS.

3. Respondent is in need of commitment as defined by § 53-21-126, M.C.A. in that Respondent's mental disorder has resulted in recent acts or omissions which make her unable to protect her life and safety. Further, Respondent's mental disorder is treatable with a reasonable prospect of success, and will, if untreated, predictably result in further deterioration of Respondent's mental condition which will create an imminent threat to Respondent and/or others.

3

4. The Respondent is either unable to or unwilling to consent to treatment so Respondent requires commitment at the Montana State Hospital for up to ninety (90) days unless sooner released as determined appropriate by the staff at the State Hospital.

5. Of the treatment alternatives available and investigated by the Professional Person, commitment to the Montana State Hospital offers the least-restrictive environment for the needs of the Respondent, and other possible alternatives, including out-patient treatment, are not suitable, based upon the Respondent's refusal and/or inability to accept treatment.

6. The Professional Person has recommended involuntary medication of the Respondent if necessary to protect the Respondent and to facilitate effective treatment.

7. If discharged from the Montana State Hospital prior to the expiration of the commitment period, Respondent would benefit from community treatment and aftercare, including case management services, to assist with monitoring Respondent's mental health condition and medication, facilitating treatment, and finding housing and employment.

¶6 On appeal, L.L.A. claims the District Court erred in making insufficient findings of fact supporting her commitment. She argues the requirements of § 53-21-127(8)(a), MCA, were not followed and, as a result, the order committing her to MSH must be vacated.

## STANDARD OF REVIEW

¶7 Whether a district court's findings of fact meet the statutory requirements is a question of law which we review for correctness. *In re Mental Health of E.P.B.*, 2007 MT 224, ¶ 5, 339 Mont. 107, 168 P.3d 662.

4

**DISCUSSION**

**¶8** *Whether the District Court erred by failing to provide a detailed statement of the facts upon which it found L.L.A. to be suffering from a mental disorder and requiring commitment.*

**¶9** The procedural requirements for an involuntary commitment are prescribed in §§ 53-21-126 and 127, MCA. This Court consistently has emphasized the need for strict compliance with statutory requirements in involuntary commitment proceedings. *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 15, 359 Mont. 191, 247 P.3d 1100; *In re A.K.*, 2006 MT 166, ¶ 14, 332 Mont. 511, 139 P.3d 849; *In re C.R.C.*, 2004 MT 389, ¶ 16, 325 Mont. 133, 104 P.3d 1065; *In re Mental Health of S.J.*, 231 Mont. 353, 355, 753 P.2d 319, 320 (1988). We have stressed the laws "are of critical importance because of the 'calamitous effect of a commitment,' including loss of liberty and damage to a person's reputation." *In re Mental Health of T.J.D.*, 2002 MT 24, ¶ 20, 308 Mont. 222, 226, 41 P.3d 323 (citing *In re Mental Health of R.M.*, 270 Mont 40, 44, 889 P.2d 1201, 1204 (1995)); *In re Shennum*, 210 Mont. 442, 450-51, 684 P.2d 1073, 1078 (1984).

**¶10** On a petition for involuntary commitment, the court must first determine whether the respondent is suffering from a mental disorder. If the court so finds, it then considers whether commitment is necessary based on the following factors:

> (a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;
> (b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;
> (c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and

5

(d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of respondent's mental condition to the point at which the respondent will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health or safety.

Section 53-21-126(1), MCA. Once the court concludes commitment is required, § 53-21-127(8)(a), MCA, mandates the court's order contain "a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment." L.L.A. asserts the District Court's findings were insufficient because they merely recited the language of § 53-21-126, MCA, and did not address any facts specific to L.L.A. The State responds with three separate arguments: 1) the findings were adequate, 2) L.L.A. is precluded from challenging the findings on appeal because she did not give the District Court an opportunity to correct them, and 3) even if the findings were insufficient, the error was harmless.

¶11 We have held "conclusory statements of statutory criteria" do not "constitute strict compliance with the statutory mandate of § 53-21-127(8)(a), MCA." *E.P.B.*, ¶ 13. Here, the District Court's order contains no indication of the facts upon which it found that, because of her mental disorder, L.L.A. is substantially unable to protect her life and safety or that imminent threat of injury to herself or others will result if she is left untreated. Citing *In re Mental Health of O.R.B.*, 2008 MT 301, 345 Mont. 516, 191 P.3d 482, and *In re Mental Health of L.R.*, 2010 MT 76, 356 Mont. 20, 231 P.3d 594, the State asserts the court's factual findings were sufficient because they are similar to those we have upheld in previous cases. Both of those cases are distinguishable.

6

¶12   In *O.R.B.*, the trial court entered nineteen findings of fact in its commitment order and each was supported by evidence presented from the commitment hearing. ¶ 20. The court's oral findings also included four pages of transcript in which it "meticulously reviewed the testimony received in support of each finding of fact." *O.R.B.*, ¶ 21. There, the District Court illustrated events and facts specific to the respondent which demonstrated she suffered from a mental disorder and required commitment. *O.R.B.*, ¶ 21. For instance, the court discussed O.R.B.'s mental status evaluation, her diagnosis, failure to follow through with necessary medical treatment, failure to maintain a proper diet, and her at-risk living conditions. *O.R.B.*, ¶ 21. In *L.R.*, the District Court also made several findings unique to L.R., including that she was paranoid, had grandiose thoughts, showed extreme religious ideation, and was suspicious of those trying to help her. *L.R.*, ¶ 21.

¶13   The court's order here enumerated seven "Findings of Fact," derived almost exclusively from the language of § 53-21-126, MCA. The only information specifically reflecting L.L.A.'s circumstances was her diagnosis (Psychotic Disorder [Not Otherwise Specified]), but the order contains no findings reflecting the basis for that determination. In contrast to *L.R.*, there were no findings concerning L.L.A.'s particular behavior and thought processes which supported the conclusions made by the court. Although the findings in *L.R.* were minimally sufficient for the statutory requirements of § 53-21-127, MCA, they at least included some findings specific to L.R.'s actual behavior demonstrating why she required commitment. *L.R.*, ¶ 21. The findings in this case lack any such references.

¶14     For example, the State contends the following findings are sufficient to satisfy the statutory requirements: "Respondent's mental disorder has resulted in recent acts or omissions which make her unable to protect her life and safety," and that lack of treatment would "predictably result in further deterioration of [her] mental condition which will create an imminent threat to her and/or others." These statements do not describe facts particular to L.L.A., however, but conclusions. While the court did find that L.L.A. was "unable or unwilling to consent to treatment," the order contains no information about L.L.A.'s behavior demonstrating she was unable to protect herself or the basis for its determination that her unwillingness to obtain treatment would result in imminent danger to herself or others. We have held such a "conclusory restatement of the statutory criteria" is insufficient to comply with the requirement for a detailed statement of facts. *In re G.M.*, 2007 MT 100, ¶ 22, 337 Mont. 116, 157 P.3d 687.

¶15     In *E.P.B.*, we noted it appeared the deputy county attorney had prepared the commitment order for the court before the hearing had even commenced. ¶ 12. We expressed concern for employing this method in involuntary commitments, noting the numerous rights implicated by the proceedings. *E.P.B.*, ¶ 12. We stated, "[i]n a different case, adoption of a petitioner's proposed findings and conclusions might be appropriate in light of the evidence presented, but district courts must—at the very least—ensure that such 'prepared' orders comply with statutory mandates." *E.P.B.*, ¶ 12. Here, based on the record, it likewise appears the State hastily prepared proposed findings of fact, which the District Court adopted without assuring compliance with the statute.

¶16 The State nonetheless contends L.L.A. is precluded from challenging the District Court's findings because she did not provide the court with notice and an opportunity to correct its error. In support of this assertion, the State cites *In re D.D.*, 277 Mont. 164, 920 P.2d 973 (1996). There, the District Court's commitment order "found that D.D. had received the benefit of all applicable statutory and constitutional rights and was seriously mentally ill and in need of further evaluation and treatment." *D.D.*, 277 Mont. at 167, 920 P.2d at 975. In support of its order, the court attached the written report of a doctor who had evaluated D.D. and testified during the hearing. *D.D.*, 277 Mont. at 167, 920 P.2d at 975. On appeal, D.D. argued the District Court's order was inadequate under M. R. Civ. P. 52(a) (1995), which required the court to "find the facts specially and state separately its conclusions of law thereon." We affirmed the commitment order, in part because D.D. did not give the District Court an opportunity to correct its error. *D.D.*, 277 Mont. at 169, 920 P.2d at 976.

¶17 The 1995 version of the commitment statute at issue in *D.D.* did not contain language identical to that now present. It provided: "The court shall enter into the record a detailed statement of the facts upon which it found the respondent to be seriously mentally ill and, if the court authorized involuntary medication, of the facts upon which it found involuntary medication to be necessary." Section 53-21-127(2)(c), MCA (1995). As noted above, the current statute requires the court's findings of fact to include a detailed statement of the facts upon which the court determined the respondent *requires commitment*. Section 53-21-127(8)(a), MCA (2009). Our decision in *D.D.* was not based on the statutory requirements that are controlling in this case. Since that case was

9

decided, we have applied the language of the current statute and we have never faulted a respondent for failing to ensure a district court's findings were sufficient to order commitment. *G.M.*, ¶ 22; *E.P.B.*, ¶¶ 12-13; *L.R.*, ¶¶ 19-23. Moreover, we have held that M. R. Civ. P. 52(b) does not require a party to seek amendment as a precondition to appeal the insufficiency of a court's findings. *In re Marriage of Metcalf*, 183 Mont. 266, 269-70, 598 P.2d 1140, 1142 (1979).

¶18 Therefore, *D.D.* is not apposite to the extent it relied on the respondent's failure to raise the deficiencies in the findings of fact at the district court level pursuant to M. R. Civ. P. 52(a), and it does not provide ground to assert waiver of the requirement for a detailed statement of facts in § 53-21-127(8)(a), MCA.

¶19 Finally, the State argues that, even if deficiencies in the District Court's findings of fact rendered the order inadequate, it was harmless error because the record contained sufficient evidence to support the commitment. In *In re R.J.W.*, 226 Mont. 419, 424, 736 P.2d 110, 113 (1987), we did apply harmless error review to the district court's factual findings but warned courts to comply with the statutory requirements in the future:

> Given the detail in the record as a whole, we find that this was harmless to appellant under the facts here. Future findings of fact should more carefully detail the factual basis on which a finding of serious mental illness is premised.

In *D.D.*, we affirmed the district court both because the respondent did not seek specific findings of fact at the trial court level and the deficiencies in the commitment order constituted harmless error; however, we again emphasized "we do not recommend the

10

shortcut method used by the District Court in this case[.]" 277 Mont. at 169, 920 P.2d at 976.

¶20 Since our decisions in both those cases, we have firmly enforced the statutory requirements for involuntary commitment proceedings. *L.K.-S.*, ¶¶ 21-26; *In re D.L.T.*, 2003 MT 46, ¶¶ 8, 18, 314 Mont. 297, 67 P.3d 189 (*overruled on other grounds by Johnson v. Costco Wholesale*, 2007 MT 43, ¶¶ 17, 21, 336 Mont. 105, 152 P.3d 727); *C.R.C.*, ¶ 16; *A.K.*, ¶¶ 11, 14; *G.M.*, ¶¶ 19-22, *E.P.B.*, ¶ 13. In *G.M.*, we specifically emphasized our language in *R.J.W.* instructing district courts to provide more carefully detailed statements of fact. As a result, we declined to apply harmless error to the deficient factual findings in that case. *G.M.*, ¶ 21. While we have found errors harmless in involuntary commitment proceedings after *D.D.* and *R.J.W.*, those errors did not amount to violation of the specific statutory mandates for ordering an involuntary commitment. *See e.g. O.R.B.*, ¶ 30 (District Court failed to ensure professional person's recommendation was included in his written report); *In re A.S.B.*, 2008 MT 82, ¶ 36, 342 Mont. 169, 180 P.3d 625 (District Court erred by incorporating hearsay from a report into its order).

¶21 Our adherence to the statutory scheme for involuntary commitment is not a matter of elevating form over substance. Findings of fact serve an important purpose. They "inform the court of appeals of the basis of the judgment." *In re Marriage of Bartsch*, 2007 MT 136, ¶ 33, 337 Mont. 386, 162 P.3d 72. They are of particular necessity in commitment cases because the order of commitment apprises the receiving staff at MSH, treatment professionals, and even law enforcement who may be involved in transporting

11

the patient, of the particular condition and behaviors that prompted hospitalization or gave rise to the need for commitment. The statute's express requirement for a detailed statement furthers that purpose and we therefore decline to apply harmless error.

¶22 Since we are reversing the commitment order on this ground, we need not address L.L.A.'s additional arguments on appeal.

## CONCLUSION

¶23 We hold the District Court erred in failing to provide a detailed statement of facts supporting its commitment order as required by § 53-21-127(8)(a), MCA. Accordingly, the order involuntarily committing L.L.A. is reversed.


/S/ BETH BAKER


We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE