FILED

December 8 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0172

DA 14-0172

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 339

IN THE MATTER OF:

B.D.,

Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DI 05-64
Honorable Edward McLean, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad R. Vanisko, Assistant Appellate Defender; Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

Kirsten H. Pabst, Missoula County Attorney, Erica Grinde, Deputy
County Attorney; Missoula, Montana

Submitted on Briefs:  November 12, 2015
Decided:  December 8, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 B.D. appeals an order from the Fourth Judicial District Court, Missoula County, ordering his involuntary commitment to Montana State Hospital (MSH) for a period not to exceed 90 days. B.D. argues on appeal that the District Court erred by failing to specify in its Involuntary Mental Health Commitment Order the specific statutory basis for commitment, and that the State failed to present sufficient evidence to support an involuntary commitment. The State contends that although the District Court did not specifically cite the statutory scheme, the District Court implicitly found that, as a result of his mental disorder, B.D. presented an imminent threat of injury to others under § 53-21-126(1)(c), MCA, and that the evidence more than supports this finding. We affirm, and address the following issues on appeal:

　　　*1. Was there sufficient evidence to support a finding that, as a result of his mental disorder, B.D. required an order of involuntary commitment?*

　　　*2. Did the District Court err by failing to provide a detailed statement of the facts and basis for B.D.'s commitment?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 B.D. suffered a closed head injury in 2003. Since then, B.D. has been treated for the secondary effects of that brain injury, and was previously involuntarily committed in 2005 and 2008. His current diagnosis is personality change due to a traumatic brain injury. On February 25, 2014, based on reports that B.D. was not consistently taking his medications and was decompensating, the county attorney again petitioned for B.D.'s commitment and for an order of apprehension, examination, and treatment, which the

2

District Court issued. B.D. was detained and treatment was administered, including medications.

¶3 Seven days later, on March 5, 2014, the District Court conducted a commitment hearing. Dr. Jay Palmatier testified that, two weeks prior to B.D.'s detention, B.D.'s treating psychiatrist, case manager, and father had met to discuss growing concerns about B.D. At this meeting, it was noted that B.D. had not picked up his medications from the pharmacy for approximately six weeks, and that B.D. was exhibiting increasing paranoia and suspicion. This paranoia was primarily targeted toward his neighbors, whom B.D. believed were "out to get him," but also directed toward his case manager and members of his treatment team at the Western Montana Mental Health Center.

¶4 Dr. Palmatier further testified that prior to B.D.'s detention, tensions between B.D. and his neighbors had escalated to the point of at least one physical altercation where law enforcement was called to the scene. In addition, B.D.'s employer, who had given B.D. "glowing reports" up until that point, expressed concern about B.D.'s increasing irritability, hostility, and guardedness at work. Further, Dr. Palmatier testified that, for some time, B.D. had been making comments and inquiries about obtaining a firearm as "self protection against anybody who was causing him problems."

¶5 The District Court entered an order for involuntary commitment not to exceed 90 days, initially to MSH as the least restrictive alternative. B.D. appeals.

3

## STANDARD OF REVIEW

> We review the findings of a district court sitting without a jury to determine if the court's findings were clearly erroneous. *See* M. R. Civ. P. 52(a)[(6)]. A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the district court has misapprehended the effect of the evidence or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.

*In re Mental Health of A.S.B.*, 2008 MT 82, ¶ 17, 342 Mont. 169, 180 P.3d 625 (citations omitted). "Additionally, we must view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings." *A.S.B.*, ¶ 17. "We review a district court's conclusions of law to determine whether those conclusions are correct." *A.S.B.*, ¶ 17.

## DISCUSSION

¶6 *1. Was there sufficient evidence to support a finding that, as a result of his mental disorder, B.D. required an order of involuntary commitment?*

¶7 Involuntary civil commitment is a statutory procedure outlined in Title 53, Chapter 21, MCA. A district court faced with a civil commitment petition must determine first if the respondent is suffering from a mental disorder. *See* § 53-21-126(1), MCA; *In re D.M.S.*, 2009 MT 41, ¶ 15, 349 Mont. 257, 203 P.3d 776. If the court determines that the respondent is suffering from a mental disorder, then it is tasked with determining if the respondent requires commitment, considering the following criteria:

> (a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;
> (b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;

4

(c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and

(d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of the respondent's mental condition to the point at which the respondent will become a danger to self or to others . . . .

Section 53-21-126(1), MCA. If commitment is justified based on subsection (c), the "[i]mminent threat of self-inflicted injury or injury to others" must be proven by "overt acts or omissions, sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA. We have long emphasized the necessity of "strict adherence" to the statutory scheme governing involuntary commitment, given the utmost importance of the rights at stake in such proceedings, and the "calamitous effect of a commitment, including loss of liberty and damage to a person's reputation." *In re Mental Health of L.K.-S.*, 2011 MT 21, ¶ 15, 359 Mont. 191, 247 P.3d 1100 (citations omitted).

¶8 B.D. first argues that the District Court's failure to cite the subsection of § 53-21-126(1), MCA, under which it was ordering commitment, was itself a violation of the requirement for strict adherence to the statutory scheme. The State answers that although the District Court failed to cite the specific subsection of the statute it used as a basis for B.D.'s commitment, the court implicitly found that B.D. required commitment under § 53-21-126(1)(c), MCA. We agree with the State. Although the failure to specify the subsection relied upon was clearly an oversight to be avoided, the District Court used language that pointed to § 53-21-126(1)(c), MCA, as the basis for B.D.'s commitment

5

("Based on his mental state and recent behaviors, Respondent [B.D.] is a danger to himself and others.").

¶9      B.D. does not dispute on appeal the finding that he suffers from a mental disorder, but argues the State failed to meet its burden of proving the necessity of commitment by clear and convincing evidence, pursuant to § 53-21-126(2), MCA. B.D. emphasizes testimony from Dr. Palmatier that, at the time of the hearing (after B.D. had received seven days of medication and treatment), he "seem[ed] to be recovering, somewhat," and that he was "less vehement about obtaining a weapon" or making threats to others.

¶10      Dr. Palmatier testified that B.D. failed to pick up his medications for at least six weeks, and B.D., during his own testimony, admitted to not taking his prescribed medication for at least two weeks. B.D.'s parents, employer, and treatment team all noted that B.D. had become increasingly suspicious and paranoid during this period, and that he spoke frequently about multiple conspiracies arrayed against him. On at least one occasion, B.D. was involved in a physical altercation with his neighbors involving a mailbox, where police were called. Dr. Palmatier also testified that, prior to B.D.'s pre-hearing detention and treatment, B.D. had mentioned several times that he wanted to acquire a firearm for "self-protection against anybody who was causing him problems." Although Dr. Palmatier reported a change in B.D.'s motives regarding a firearm since re-starting treatment, B.D.'s interest in obtaining a gun remained: "[B.D.] states, though, that the only reason that he would need a firearm today, as opposed to several days ago, when he said he would need it to protect himself from neighbors and others, and an invasion from the north – today, he says he just wants it for hunting." The District

Court's finding that "[B.D.] still expresses a desire to possess a firearm" is not clearly erroneous.[1]

¶11 B.D. argues that the District Court's Order "recites allegations from the petition regarding B.D.'s actual attempt to obtain a weapon, but the State presented no evidence to substantiate the allegations." However, the testimony about B.D.'s stated interest in obtaining a gun was evidence viewed credibly by the District Court and, as we have noted, an imminent threat need not be "a certainty." *In re S.L.*, 2014 MT 317, ¶ 31, 377 Mont. 223, 339 P.3d 73 ("Threat is not certainty. The law requires only proof beyond a reasonable doubt that the threat of future injury presently exists and that the threat is imminent, that is, impending, likely to occur at any moment."). As we have noted, "[t]he statute does not require a court wait until a person . . . takes the next step . . . and actually uses weapons . . . against others." *In re Mental Health of R.J.W.*, 226 Mont. 419, 423, 736 P.2d 110, 112 (1987) (affirming a district court's involuntary commitment order under a previous version of the mental health commitment statute). B.D.'s increasing hostility, paranoia and suspicion, culminating in multiple altercations with his neighbors (one that required police intervention), and finally his alarming comments and inquiries about obtaining a firearm to protect himself from "anybody who was causing him

---

[1] B.D.'s argument suggests that, because he is prevented under federal law from owning a firearm, due to his prior mental health commitments, his comments about obtaining a weapon should be disregarded. *See* 18 U.S.C. § 922(g)(4) (making it "unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."). However, regardless of any legal prohibition he was under, B.D.'s statements of interest in obtaining a firearm remained relevant to the proceeding.

problems," satisfied the statute's requirements that overt acts be proven to support the District Court's findings that B.D. posed a danger to himself and others in his community, justifying commitment because of "imminent threat of injury to [himself] or others because of [his] acts . . . ." Section 53-21-126(1)(c), MCA.

¶12  *2. Did the District Court err by failing to provide a detailed statement of the facts and basis for B.D.'s commitment?*

¶13  B.D. argues that the District Court's verbal and written orders lacked sufficient factual detail to satisfy statutory requirements for an order of commitment. Section 53-21-127(8)(a), MCA, requires that when ordering an involuntary commitment, the district court shall make "a detailed statement of the facts upon which the court found the respondent to be suffering from a mental disorder and requiring commitment." We have previously faulted a district court's findings of fact that were insufficient to satisfy the statute. *See L.K.-S.*, ¶ 15 (citations omitted); *In re G.M.*, 2007 MT 100, ¶ 22, 337 Mont. 116, 157 P.3d 687 ("The [district] court's conclusory restatement of the statutory criteria and its vague reference to witness testimony do not constitute strict compliance with the statutory mandate."). We have cautioned trial courts that they must enter a "detailed statement of the facts upon which the court [finds] the respondent to be suffering from a mental disorder and requiring commitment." *In re A.K.*, 2006 MT 166, ¶ 14, 332 Mont. 511, 139 P.3d 849 (citations omitted) (brackets in original).

¶14  The District Court found that B.D. "ha[d] stopped taking his medications consistently over the course of the last two months" and was unwilling to voluntarily submit to treatment. It found that B.D. was "extremely paranoid and believed his

8

neighbors are trying to break into his trailer," and that "his parents are against him and are out to put him in prison." The District Court noted his statements about his desire to obtain a firearm, and the concerns noted by coworkers, employer, and case manager. It referenced B.D.'s "multiple physical altercations with his neighbors in the last two months."

¶15     While we emphasize that findings of facts "upon which the court found the respondent to be suffering from a mental disorder and requiring commitment" must be detailed, § 53-21-127(8)(a), MCA, we conclude that the District Court's findings were sufficient here to satisfy the statute. *See In re Mental Health of L.R.*, 2010 MT 76, ¶ 23, 356 Mont. 20, 231 P.3d 594.

¶16     Affirmed.

/S/ JIM RICE

We concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT