FILED

11/04/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0148

DA 24-0148

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 251

IN THE MATTER OF:

J.L.O.,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DI-23-07
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Britt Cotter, Cotter Law Office, P.C., Polson, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

     Debra Ann Jackson, Mineral County Attorney, Superior, Montana

Submitted on Briefs:  September 24, 2025

Decided:  November 4, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    J.L.O. appeals from the Fourth Judicial District Court, Mineral County's January 16, 2024 Order of Commitment.

¶2    We address the following dispositive issue:

*Whether the District Court erred by denying J.L.O.'s motion to dismiss the commitment petition due to the State's failure to provide a timely mental health evaluation by a qualified professional.*

¶3    We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4    On December 27, 2023, the State petitioned to involuntarily commit J.L.O., alleging that she suffered from schizophrenia and posed a danger to herself or others.  The petition relied on a report by a licensed clinical social worker (LCSW) from St. Patrick's Emergency Department who had examined J.L.O. the previous day.  The District Court appointed an unnamed licensed professional counselor as the professional person to examine J.L.O.  J.L.O. made an initial appearance, and the District Court scheduled a hearing on the petition for January 2, 2024, as the fifth day fell on a holiday.  J.L.O. was detained at the Montana State Hospital (MSH) pending the hearing.

¶5    On December 28, 2023, J.L.O. was examined by an LCSW, Lucas Woodhead, whom the State believed was a "professional person" qualified to conduct examinations and make recommendations pursuant to § 53-21-123, MCA.  The State did not provide J.L.O.'s counsel with Woodhead's report until after the January 2, 2024 hearing on the petition.

2

¶6 At the January 2, 2024 hearing on the petition, the State informed J.L.O.'s counsel that Woodhead recommended commitment. Based on the State's representation, J.L.O.'s counsel requested an independent evaluation and suggested scheduling a status hearing on January 5, 2024, to facilitate an update on the second opinion. The State sent Woodhead's report to J.L.O.'s counsel later that day. After reviewing the report and contacting Woodhead, J.L.O.'s counsel discovered that Woodhead had not been certified as a professional person as provided for in § 53-21-106, MCA, and therefore did not qualify as a professional person under § 53-21-102(16), MCA (2023).

¶7 On January 3, 3024, J.L.O.'s counsel moved to dismiss the commitment petition due to the State's failure to have J.L.O. examined by a qualified professional person within the five-day hearing deadline, as required by § 53-21-122(2)(a), MCA. J.L.O.'s attorney also rescinded her request for an independent evaluation. The State conceded Woodhead's lack of certification but argued that J.L.O.'s continuance request waived the five-day hearing deadline, providing the State with enough time to complete another evaluation before the rescheduled hearing on January 5, 2024. The District Court denied J.L.O.'s motion to dismiss and her request to hold a hearing on the petition that same day.

¶8 On January 4, 2024, the District Court appointed Amanda Krieg, a certified professional person and LCSW, to complete a second examination of J.L.O. Krieg did not personally examine or observe J.L.O.; Krieg instead reviewed J.L.O.'s mental health records from 2020 and 2021, reviewed Montana State Hospital records, and spoke with her sisters. Krieg's report referred to and directly copied portions of Woodhead's report.

¶9 At the January 5, 2024 hearing, J.L.O.'s attorney renewed his motion to dismiss the petition on the additional grounds that § 53-21-123(4), MCA, prohibited the District Court from appointing Krieg because no "sound medical reasons" justified further evaluation. J.L.O.'s attorney also objected to Krieg's report because she relied on Woodhead's disqualified report. The District Court denied the motion to dismiss, finding that J.L.O.'s § 53-21-123(4), MCA, argument rested on the previously denied motion to dismiss, and proceeded to the merits of the petition. The State called Krieg to testify by Zoom, but J.L.O.'s counsel objected to her remote testimony under § 53-21-140(5)(b), MCA (2023). The District Court continued the hearing to January 11, 2024, to allow Krieg to testify in person and denied J.L.O.'s request for an earlier hearing.

¶10 The hearing on the commitment petition occurred on January 11, 2024. The District Court again denied J.L.O.'s motion to dismiss, noting J.L.O.'s counsel's involvement in the "scheduling issues" related to J.L.O.'s commitment proceedings. Krieg testified to J.L.O.'s schizophrenia diagnosis and that she posed a threat to herself and others. Krieg acknowledged that she had not personally evaluated J.L.O. and relied exclusively on secondhand descriptions, and the District Court excluded Krieg's report as inadmissible hearsay. After J.L.O.'s sister and J.L.O. testified, the District Court ruled from the bench and found that J.L.O. was suffering from schizophrenia, paranoid type, and that she could not provide for the safety of her children. Without holding a separate disposition hearing, the District Court committed J.L.O. to MSH for a maximum of ninety days and authorized

4

MSH to involuntarily medicate J.L.O. The District Court issued a written Order of Commitment on January 16, 2024.

## STANDARDS OF REVIEW

¶11 This Court reviews involuntary civil commitment orders to determine whether the district court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re N.A.*, 2021 MT 228, ¶ 8, 405 Mont. 277, 495 P.3d 45.

## DISCUSSION

¶12 *Whether the District Court erred by denying J.L.O.'s motion to dismiss the commitment petition due to the State's failure to provide a timely mental health evaluation by a qualified professional.*

¶13 J.L.O. argues that the District Court incorrectly denied her motion to dismiss on the grounds that her mental health evaluation was invalid and the hearing on the petition occurred after the five-day deadline, violating the involuntary commitment statutes. The State does not contest the invalidity of Woodhead's evaluation, but contends that the delay in obtaining a qualified examination was reasonable and that J.L.O.'s requested continuance waived her right to a hearing within five days. In the alternative, the State argues that any error was harmless.

¶14 "To safeguard against the 'calamitous effect' of an erroneous deprivation of liberty and damage to a person's reputation," courts "must strictly adhere" to the involuntary commitment statutory scheme. *In re C.K.*, 2017 MT 69, ¶ 12, 387 Mont. 127, 391 P.3d 735 (quoting *In re B.D.*, 2015 MT 339, ¶ 7, 381 Mont. 505, 362 P.3d 636). The statutory "procedural safeguards" are "of critical importance." *In re Mental Health of L.K.-S.*,

2011 MT 21, ¶ 15, 359 Mont. 191, 247 P.3d 1100 (quoting *In re Mental Health of T.J.D.*, 2002 MT 24, ¶ 20, 308 Mont. 222, 41 P.3d 323).

¶15     Sections 53-21-122 and -123, MCA, set forth detailed procedures that the district court must follow upon the filing of a petition for involuntary commitment. After finding probable cause, the district court must, among other things, hold an initial hearing, appoint a "professional person," and schedule a hearing on the petition to occur within five days, unless the fifth day is a holiday or the respondent requests additional time. Section 53-21-122(2)(a), MCA. To qualify as a "professional person," a mental health professional must be certified by the Department of Public Health and Human Services (DPHHS) as meeting education, training, and proficiency standards set by administrative rulemaking.[1]  Section 53-21-102(16)(e), MCA (2023); § 53-21-106, MCA. After the initial hearing, the respondent "must be examined by the professional person without unreasonable delay," and the professional person must provide the court with a written report and copy the county attorney and defense counsel. Section 53-21-123(1), MCA. The court must determine whether to hold the scheduled hearing on the commitment petition based on the professional person's findings and recommendation. Section 53-21-123(3)(c), MCA. The court "may not order further evaluation pending the hearing unless sound medical reasons require additional time for a complete evaluation"

---

[1] Medical doctors, licensed psychologists, and advanced practice registered nurses and physician assistants with clinical specialties in psychiatric mental health are statutorily exempted from the DPHHS certification requirement. Section 53-21-102(16), MCA (2023).

and unless the order specifies the reasons and amount of time needed. Section 53-21-123(4), MCA.

¶16 The District Court failed to strictly adhere to the procedural safeguards requiring evaluation by a professional person and a hearing on the petition within five days. The District Court scheduled the hearing on J.L.O.'s commitment petition for January 2, 2024, the last day of the statutory five-day window. *See* § 53-21-122(2)(a), MCA. As the State concedes, Woodhead did not qualify as a professional person. Woodhead's lack of DPHHS certification disqualified his examination and report. Therefore, a professional person did not examine J.L.O. before the initially scheduled hearing on January 2, 2024. *See* §§ 53-21-123(1), (3), -102(16)(e), MCA (2023).

¶17 The State argues that J.L.O. necessarily waived her right to a hearing on the petition within five days because her attorney requested a continuance at the January 2 hearing. But that request was prompted by the State's failure to provide J.L.O. with a copy of the written report prior to the hearing, as required by § 53-21-123(1), MCA. Until J.L.O.'s counsel received Woodhead's report, after requesting the continuance, he was unaware that Woodhead was not qualified as a professional person. Upon receiving the report and confirming that Woodhead lacked the requisite qualifications, J.L.O.'s attorney immediately moved to dismiss the petition and rescinded her request for a status hearing. We are not inclined to endorse the State's theory that seeks to capitalize on its failure to ensure the professional person who examined J.L.O. satisfied the statutory criteria, and its

7

failure to timely provide a copy of the report that ultimately alerted J.L.O.'s counsel that Woodhead was not a qualified professional person.

¶18 The State's waiver theory relies on an "illusion of choice" that "circumvent[s] the strict statutory requirements governing the involuntary commitment process." *See In re N.A.*, ¶ 18. In *In re N.A.*, we held that respondent N.A. did not voluntarily acquiesce to remote testimony by choosing to proceed with her hearing on the petition after the District Court overruled her objection to the use of two-way electronic communications. *In re N.A.*, ¶ 19. Such a request would "not have arisen voluntarily" for being "motivated solely by the State's apparent failure to notify" the respondent of the intended remote appearance, "thereby effectually excusing that failure." *In re N.A.*, ¶ 18. The respondent "owed the State no obligation to seek a continuance," which would have extended the duration of her involuntary detention pending the hearing and allowed the State additional time to strengthen its case. *In re N.A.*, ¶ 18.

¶19 In this case, the State presents a similar "illusion of choice" between J.L.O.'s procedural rights to a hearing within five days, to be examined by a qualified professional person, and to object to remote testimony. *See In re N.A.*, ¶ 18. Like the ostensible continuance in *In re N.A.*, the request to extend the five-day hearing deadline did not arise voluntarily, as it was "motivated solely" by the State's failure to provide J.L.O.'s counsel with Woodhead's report before the first hearing on the petition. *In re N.A.*, ¶ 18. Immediately upon receiving Woodhead's report, J.L.O.'s counsel withdrew the request for the January 5 status hearing and moved to dismiss the petition based on the State's failure

to have J.L.O. examined by a professional person before the five-day hearing deadline. At the January 5 hearing, J.L.O.'s counsel appropriately asserted her statutory right to object to Krieg's appearance by Zoom under § 53-21-140(5)(b), MCA (2023). The District Court then compounded its initial error by imposing yet another continuance despite acknowledging that doing so would punish J.L.O. for exercising that statutory right. At the January 11 hearing, the District Court justified denying the motion to dismiss by blaming J.L.O.'s counsel for being "involved in all of" the "numerous scheduling issues." The District Court echoed the State's illusion of choice by failing to acknowledge that these delays arose from multiple violations of J.L.O.'s procedural rights. J.L.O.'s only "involvement" with these delays was her refusal to acquiesce to these violations. But these rights are not mutually exclusive. J.L.O. owed no obligation to sacrifice her rights to a timely examination by a qualified professional person and to in-person testimony in order to exercise her right to a timely hearing. *See In re N.A.*, ¶ 18.

¶20 The State argues alternatively that any error in denying the motion to dismiss the petition was harmless. The State points out that J.L.O. "presented as profoundly mentally ill" at the January 11 hearing, that dismissal would have forced the State to immediately file another petition, and that the District Court believed that, based on the petition's assertions, dismissal "on procedural issues" risked significant harm to J.L.O. or others. Although we have found errors harmless in involuntary commitment proceedings before, they were in circumstances where the "errors did not amount to violation of the specific statutory mandates for ordering an involuntary commitment." *In re N.A.*, ¶ 14 (quoting

9

*In re L.L.A.*, 2011 MT 285, ¶ 20, 362 Mont. 464, 267 P.3d 1). We have reversed commitments for failure to strictly adhere to statutory procedural safeguards. *E.g.*, *In re N.A.*, ¶ 16 (allowing remote testimony over respondent's objection); *In re L.L.A.*, ¶¶ 21, 23 (insufficiently detailed statement of facts supporting commitment order); *In re Mental Health of T.J.D.*, ¶¶ 16-18 (reliance on inadmissible hearsay in professional person's report as sole basis for commitment). This "adherence to the statutory scheme for involuntary commitment is not a matter of elevating form over substance," because the requirements serve important purposes. *In re L.L.A.*, ¶ 21.

¶21 The District Court's erroneous denial of J.L.O.'s motion to dismiss was not harmless. The District Court violated the "specific statutory mandates for ordering" J.L.O.'s involuntary commitment by not ensuring that J.L.O. was examined by a professional person within the five-day hearing deadline and by continuing proceedings based on Woodhead's invalid recommendation. *In re N.A.*, ¶ 14. Strictly enforcing the professional person qualifications does not elevate form over substance. *See In re L.L.A.*, ¶ 21. The certification requirements serve an important purpose by ensuring that mental health professionals are prepared to play a central role in involuntary commitment proceedings by being proficient and knowledgeable about mental health laws and treatment resources. *See* § 53-21-106(3)(d), MCA; Admin. R. M. 37.91.201(2) (2023) (requiring successful completion of examination covering Title 53, chapter 21, MCA, and available mental health services within the state). The District Court's rejection of J.L.O.'s motion to dismiss denied her this critically important procedural safeguard. By granting the State

10

a second chance to meet its statutory obligations, the District Court extended J.L.O.'s pre-hearing detention at MSH by eight days. The District Court's error was not harmless and requires reversal.

## CONCLUSION

¶22    The District Court erred by denying J.L.O.'s motion to dismiss the petition due to the State's failure to have J.L.O. examined by a qualified professional person before the five-day hearing deadline. We reverse the District Court's Order of Commitment.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE

11