DA 13-0620

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 145N

IN THE MATTER OF:

A.G.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DI 13-44
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Lucy Hansen, Attorney at Law, Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Ryan Nordlund, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  May 8, 2014
Decided:  June 3, 2014

Filed:

_____
                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A.G. appeals from the Order of the Montana Thirteenth Judicial District Court, Yellowstone County, committing her to the Montana State Hospital for a period not to exceed three months. We affirm.

¶3 On July 14, 2013, A.G. was admitted to the Billings Clinic after a disturbance in her mother's home. The police report stated she "urinated all over herself and said the minions in her head told her to do things." The following day, a nurse practitioner evaluated her. That evaluation stated that A.G. was actively hallucinating and delusional, had kicked a psychiatric nurse practitioner, had hit her mother over the head, had made homicidal threats against emergency department staff and had answered yes when asked whether she was suicidal. It also revealed she had been admitted to the hospital for psychiatric treatment on five occasions over the preceding two years. A.G. could not return to her mother's home and did not have a place to live.

¶4 On July 16, 2013, the County filed a petition to involuntarily commit A.G. The following day, the District Court issued an order directing a psychiatric exam by Dr. Amy Schuett. Dr. Schuett evaluated A.G. and concluded that she suffered from schizophrenia. Dr. Schuett noted that A.G. had demonstrated responding to auditory hallucinations, talking and listening to auditory hallucinations, paranoia, thought withdrawal, disorganized speech,

2

disorganized behavior and hostility. She recommended that A.G. be involuntarily committed to the state hospital since she refused to take psychiatric medications and did not recognize her illness. On July 18, 2013, the court held an eleven-minute-long evidentiary hearing in the matter, at which it heard testimony from Dr. Schuett. When asked whether she wanted to testify, A.G. responded she did not. When the court adjourned, A.G. asked the judge, "Did you really want me to testify?" The judge replied, "Nope." A.G. did not testify at the hearing. The District Court entered findings of fact, conclusions of law and an order directing commitment to the Montana State Hospital for a period not to exceed three months, with authorization to involuntarily administer medication to facilitate treatment.

¶5 On appeal, A.G. contends that her right to be present, pursuant to § 53-21-116, MCA, was violated because she was not allowed to testify at the commitment hearing. She further contends that the State did not present sufficient evidence to prove beyond a reasonable doubt that commitment was necessary.

¶6 A.G.'s first argument is without merit. Even if the statutory right to be present encompasses a right to testify, A.G. was asked whether she wished to testify and declined. We cannot identify any reversible error here.

¶7 Addressing A.G.'s second argument, § 53-21-126, MCA, governs involuntary commitment proceedings in Montana. The statute requires that the court must determine, at a formal hearing, whether the respondent is suffering from a mental disorder and needs to be committed. *In re Mental Health of T.J.D.*, 2002 MT 24, ¶ 12, 308 Mont. 222, 41 P.3d 323. The existence of a mental disorder must be proved "to a reasonable medical certainty."

3

Section 53-21-126(2), MCA. In determining whether commitment is necessary, the court must "consider" the following factors:

> (a) whether the respondent, because of a mental disorder, is substantially unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety;
> (b) whether the respondent has recently, because of a mental disorder and through an act or an omission, caused self-injury or injury to others;
> (c) whether, because of a mental disorder, there is an imminent threat of injury to the respondent or to others because of the respondent's acts or omissions; and
> (d) whether the respondent's mental disorder, as demonstrated by the respondent's recent acts or omissions, will, if untreated, predictably result in deterioration of the respondent's mental condition to the point at which the respondent will become a danger to self or to others or will be unable to provide for the respondent's own basic needs of food, clothing, shelter, health, or safety. Predictability may be established by the respondent's relevant medical history.

Section 53-21-126(1), MCA. The State must prove physical facts and evidence beyond a reasonable doubt and all other matters by clear and convincing evidence. Section 53-21-126(2), MCA.

¶8 A.G. argues that the State failed to carry its burden to show the necessity of committing her, because she argues Dr. Schuett's "scant" testimony was not sufficient to prove commitment was necessary beyond a reasonable doubt. She also alleges that Dr. Schuett admitted at the hearing that A.G. was not suicidal and had not committed overt acts or omissions that could lead to injury of herself or others.

¶9 We disagree. Dr. Schuett's testimony was sufficient, in light of the record as a whole, to support the District Court's determination that involuntary commitment was necessary and A.G.'s factual allegations of error are incorrect. Dr. Schuett's testimony was supported by a written opinion. Her observations were corroborated by the report of the nurse practitioner

4

A.G. saw upon admission to the clinic and A.G.'s psychiatric history. The hearing transcript reveals that the District Court inquired of Dr. Schuett as to whether each element for commitment had been met. Dr. Schuett testified that A.G. had threatened and been violent towards a number of people in her psychotic state. Dr. Schuett's testimony also reveals that although A.G. had "most recently" denied suicidal ideations, she had previously voiced those ideations to a nurse practitioner she saw upon admission to the hospital. Nonetheless, the District Court relied only on § 53-21-126(1)(a) and -(1)(c), MCA, to support its decision that A.G. needed to be committed. The court took note of Dr. Schuett's observations that A.G. was psychotic, delusional, agitated, combative and hearing voices—and refused to take medication to remedy these conditions. The court also considered Dr. Schuett's testimony that A.G. could not care for herself because her thinking was too disorganized to care about hygiene and safety and she had no means of providing shelter for herself. The court further recognized and relied on Dr. Schuett's professional opinion that A.G. needed inpatient treatment with the involuntary administration of medication in order to improve and regain the ability to care for herself. Other facts—notably A.G.'s history of failing to take her medication and repeated psychiatric episodes—supported the court's determination. We conclude that the evidence was sufficient to support the District Court's determination that involuntary commitment was necessary, pursuant to § 53-21-126(1)(a) and -(1)(c), MCA.

¶10    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

5

¶11     Affirmed.


                                        /S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE


                                    6