JUSTICE WHEAT
delivered the Opinion of the Court.
¶1 Steven Buck (Steven) appeals from the order of the Montana Eleventh Judicial District Court, Flathead County, denying his motion to dismiss for lack of subject-matter jurisdiction. We affirm.
ISSUE
¶2 We review the following issue: Did the District Court err when it denied Steven’s motion to dismiss for lack of subject-matter jurisdiction?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Steven and Susan Buck (Susan) were married on March 12,1988, in Santa Barbara, California. They left the United States soon thereafter, as required by Steven’s employer, and continued to live outside of the United States for most of the next twenty years.
¶4 In 2001, while living in Indonesia, Susan and Steven purchased land and built a house near Kalispell. The couple, along with their children, began spending time at this house during holidays and vacations.
¶5 From 2006 to 2010, the family lived primarily in Indonesia. In June 2010, however, Susan left Indonesia and moved to Florida with her and Steven’s minor son. Steven remained in Indonesia.
¶6 In October 2010, Susan filed for dissolution of marriage in a Florida court. That court determined that it did not have personal jurisdiction over Steven. Accordingly, it dismissed Susan’s petition for dissolution.
¶7 On January 8, 2013, Susan filed a petition for dissolution of marriage in Montana. The petition alleged, among other things, that Susan “now temporarily resides in Florida” and “has been a resident of the State of Montana for in excess of 90 days as the parties own property in and consider Montana their domicile.”
¶8 On January25,2013, Steven moved to dismiss Susan’s petition for lack of subject-matter jurisdiction. In a brief supporting this motion, Steven argued that the District Court lacked subject-matter jurisdiction over the dissolution proceeding because neither he nor Susan lived in Montana for at least 90 days preceding Susan’s petition. On April 8,2013, Susan responded to this motion, arguing that she was domiciled in Montana for at least 90 days preceding her petition and that the District Court has jurisdiction over the dissolution proceeding. ¶9 After a motion, briefs for and against, and ultimately an order allowing her to do so, Susan amended her petition on October 18,2013. The amended petition alleged: “Petitioner currently resides in Montana” and “Petitioner has been a resident of the State of Montana *387 in excess of 90 days.” Steven filed a response to the amended petition, having never responded to the original petition, on November 6,2013. In it, Steven admitted to the allegations concerning Susan’s residence, denied that he had been a resident of Montana for 90 days, and asked the District Court to dissolve the parties’ marriage.
¶10 On December 9,2013, Steven filed a reply brief in support of his motion to dismiss for lack of subject-matter jurisdiction. Responding to Susan’s arguments, Steven again argued that Susan neither resided in nor was domiciled in Montana for the 90 days preceding her petition for dissolution. He again asked that his motion be granted and that Susan’s petition be dismissed.
¶11 On January 15,2014, the District Court denied Steven’s motion to dismiss. It found that Susan “satisfied the jurisdictional requirements” to bring her petition for dissolution in Montana, and that it had jurisdiction over the matter. Steven appeals.
STANDARD OF REVIEW
¶12 A district court’s determination of whether it lacks subject-matter jurisdiction is a conclusion of law, which we review for correctness. Schuster v. Northwestern Energy Co., 2013 MT 364, ¶ 6, 373 Mont. 54, 314 P.3d 650.
DISCUSSION
¶13 Did the District Court err when it denied Steven’s motion to dismiss for lack of subject-matter jurisdiction?
¶14 As a prerequisite to dissolving a marriage, § 40-4-104(lXa), MCA, requires a court to find, “at the time the action was commenced,” that one of the parties has been domiciled in Montana for 90 days preceding the “filing of the action.” Steven contends that neither he nor Susan was domiciled in Montana for 90 days preceding Susan’s petition for dissolution. For that reason, he argues that the District Court lacks jurisdiction over the dissolution proceeding.
¶15 Neither party, however, contests that Susan has now established domicile in Montana for at least 90 days. Indeed, Steven specifically admitted that Susan had been domiciled in Montana for at least the 90 days preceding her amended petition. Susan, therefore, argues that even if the District Court did not have jurisdiction over the dissolution when her initial petition was filed, this jurisdictional defect was cured when she, having been given leave to do so, filed her amended petition *388 for dissolution.[1]
¶16 As an initial matter, Susan’s “amended” petition was technically a supplemental petition, because it alleged facts that occurred after her initial petition was filed. See M. R. Civ. P. 15; 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1504, at 254 (3d ed. 2010). Specifically, her “amended” petition alleged that she no longer lived in Florida; that she had been domiciled in Montana for at least the last 90 days; and that her son had reached the age of majority since the initial petition was filed. The distinction between an amended and a supplemental petition is often of little importance, since leave to amend or supplement a petition is based upon the same criteria. See M. R. Civ. P. 15; Wright, Miller & Kane, supra, § 1504, at 254-55. For the sake of clarity and precision, however, we will refer to Susan’s “amended” petition as a “supplemental petition” for the rest of this Opinion.
¶17 M. R. Civ. P. 15(d) allows parties to make supplemental pleadings, and it states that such pleadings may cure defects in prior pleadings. The Rule reads:
On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.
We have had few opportunities to consider the meaning of this Rule, and the question of whether jurisdictional defects are the type of defects supplemental pleadings can cure is a question of first impression for this Court. Yet, the United States Supreme Court and several Federal Circuit Courts have considered this question as it relates to supplemental pleadings made pursuant to the Federal Rules of Civil Procedure. We find the reasoning in those decisions helpful here, especially since M. R. Civ. P. 15(d) was based upon and is phrased identically with Fed. R. Civ. P. 15(d). Compare M. R. Cuv. P. 15(d) with Fed. R. Civ. P. 15(d); Committee Notes to M. R. Civ. P. 15, at 1234-35 *389 (2014 Annotations).
¶18 Those courts have determined that “the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint.” Feldman v. Law Enforcement Assocs. Corp., 752 F.3d 339, 347 (4th Cir. 2014) (quoting Franks v. Ross, 313 F.3d 184, 198 (4th Cir. 2002)). The U.S. Supreme Court has confirmed that supplemental pleadings can even be used to cure subject-matter jurisdiction deficiencies. Mathews v. Diaz, 426 U.S. 67, 75, 96 S. Ct. 1883, 1889 (1976); see also Black v. Sec’y of Health & Human Servs., 93 F.3d 781, 789-90 (Fed. Cir. 1996) (discussing Mathews)', Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 290 (8th Cir. 1988) (citing Mathews). Yet, regardless of whether a defect is jurisdictional, the question of whether a supplemental pleading can be used to cure a defect in a particular case depends upon the statute controlling the cause of action. Cent. Pines Land Co. v. United States, 697 F.3d 1360, 1365-66 (Fed. Cir. 2012); Black, 93 F.3d at 790-91. If it would defeat the purpose of the statute to permit a plaintiff to ignore a statutory prerequisite, file his complaint, and then seek to cure the defect by filing a supplemental pleading after the prerequisite has been met, then the plaintiff should not be allowed to do so. Cent. Pines Land Co., 697 F.3d at 1365-66; Black, 93 F.3d at 790-91. If, on the other hand, dismissing the petition for lack of jurisdiction would serve no other purpose than to create an additional procedural technicality, then, in the interests of judicial economy and a preference for adjudication on the merits, the plaintiff should be allowed to cure the defect with a supplemental pleading. E.g., Feldman, 752 F.3d at 347-48 (jurisdictional defect was cured by exhaustion of administrative remedies and supplemental filing alleging exhaustion); Positive Black Talk, Inc. v. Cash Money Records, Inc., 394 F.3d 357, 365-67 (5th Cir. 2004) (jurisdictional defect was cured by copyright registration following the initial complaint), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 130 S. Ct. 1237 (2010); Black, 93 F.3d at 789-91 (jurisdictional defect was cured by surpassing a $1,000 expense requirement and filing a supplemental complaint alleging the expenses); M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488-89 (11th Cir. 1990) (jurisdictional defect was cured by copyright registration and supplemental filing alleging registration); Wilson, 838 F.2d at 290 (jurisdictional defect was cured by expiration of a 60-day waiting period and supplemental filing alleging expiration); Junso Fujii v. Dulles, 224 F.2d 906, 907 (9th Cir. 1955) (jurisdictional defect was cured by administrative denial of plaintiff’s citizenship and supplemental filing alleging denial). *390 ¶19 These decisions comport with our own jurisprudence. As we have held, court-made rules, such as M. R. Civ. P. 15(d), cannot confer jurisdiction or nullify inconsistent statutory provisions. See Sharp v. Eureka Town Council, 2014 MT 216, ¶ 11, 376 Mont. 221, 331 P.3d 840; Miller v. Eighteenth Judicial Dist. Court, 2007MT 149, ¶ 45, 337 Mont. 488, 162 P.3d 121. Moreover, when applying statutes, our role is to give effect to the intent of the Legislature, rather than this Court’s own judgment. Sections 1-2-101 and-102, MCA; McCormick v.Brevig, 2004 MT 179, ¶ 40, 322 Mont. 112, 96 P.3d 697. At the same time, we will not adhere to procedural technicalities if doing so serves no other purpose than to create procedural mousetraps; procedure is not valued for procedure’s sake, but is instead a means for facilitating fair adjudication of controversies on their merits. See Seamster v. Musselshell Cnty. Sheriffs Office, 2014 MT 84, ¶ 17, 374 Mont. 358, 321 P.3d 829; Forsythe v. Great Falls Holdings, LLC, 2008 MT 384, ¶ 19,347 Mont. 67, 196 P.3d 1233; Little Horn State Bank v. Real Bird, 183 Mont. 208, 210, 598 P.2d 1109, 1110 (1979). Indeed, the Montana Rules of Civil Procedure are meant to “be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.” M. R. Civ. P. 1. We are persuaded by the reasoning of the courts cited above, given their consistency with these principles.!
¶20 Thus, we hold that if Susan was not domiciled in Montana for the 90 days preceding her petition, any resulting jurisdictional defect was cured when she established domicile for 90 days and then alleged as much in a supplemental pleading. Here, both parties agree that Susan was domiciled in Montana for at least 90 days before she filed her supplemental pleading. Thus, the dissolution proceeding would properly be before the District Court but for the technical distinction between filing a new petition and filing a supplemental petition. We do not adhere to this distinction in this case. To do otherwise would serve oxdy to waste the parties’ time, their money, and the resources of the judiciary, without protecting any legislative or other substantive purpose.
¶21 No legislative purpose is harmed by allowing Susan’s supplemental pleading to cure the alleged jurisdictional defect. Indeed, the relevant legislative purposes are best served by allowing the District Court to proceed. Section 40-4-104(1)(a), MCA, was based upon the language of the Uniform Marriage and Divorce Act. Section 1, Ch. 536, L. 1975 (codified at § 48-301, R.C.M. 1947 and never repealed or codified in MCA). While not explicitly adopted by the Legislature, the Uniform Law Commission’s Comments to that Act give some insight *391 into the legislative purpose for the 90-day domicile requirement. See Warren v. Campbell Farming Corp., 2011 MT 324, ¶ 10, 363 Mont. 190, 271 P.3d 36 (considering the Official Comments to the Revised Model Business Corporation Act because the Montana Business Corporation Act was “very similar to the model act”). The comments state that § 40-4-104(l)(a), MCA, requires a court to find “that one party to the marriage has established an appropriate connection with the state” before dissolving a marriage. Commissioners’ Note to § 40-4-104, MCA, at 697 (2014 Annotations). Even if Susan did not establish such a connection with Montana before she filed her petition, a connection has since been established. Thus, the legislative purpose underlyingthe 90-day domicile requirement of § 40-4-104(lXa), MCA, is not harmed by allowing the case to proceed here.
¶22 Indeed, the Legislature’s goals for enacting the dissolution statutes are best served by allowing the District Court to proceed. Title 40, chapter 4, MCA, which controls dissolution proceedings, was enacted to:
promote the amicable settlement of disputes that have arisen between parties to a marriage; mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage;... and... make the law of legal dissolution of marriage effective for dealing with the realities of matrimonial experience by making irretrievable breakdown of the marriage relationship the sole basis for its dissolution.
Section 40-4-101, MCA. This suggests that the legislative goals for § 40-4-104, MCA, included increasing access to dissolution and promoting speedy, amicable adjudication. In this case, adhering to the procedural technicalities only delays the dissolution proceedings and may tend to make them more contentious and expensive. Thus, allowing the parties to proceed without the burden of refiling the action best serves the legislative goals underlying Title 40, chapter 4, MCA.
CONCLUSION
¶23 For the foregoing reasons, we decide that if Susan was not domiciled in Montana for the 90 days preceding her petition, any resulting jurisdictional defect was cured when she established domicile for 90 days and filed a supplemental pleading alleging such. For this reason, we affirm the order of the District Court denying Steven’s motion to dismiss for lack of subject-matter jurisdiction.
CHIEF JUSTICE McGRATH, JUSTICES BAKER, COTTER and RICE concur.

 Both parties assume that the 90-day domicile requirement of § 40-4-104(l)(a), MCA, is a condition to a court’s exercise of subject-matter jurisdiction over a dissolution proceeding. Since the question of whether or not this requirement is truly jurisdictional was neither raised nor briefed, we do not consider this question. Instead, we conduct this analysis assuming, without deciding, that § 40-4-104(lXa), MCA, imposes jurisdictional requirements.