FILED

10/18/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0511

DA 20-0511

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2022 MT 205

IN THE MATTER OF:

S.E.,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District, In and For the County of Gallatin, Cause No. DI-20-39C Honorable John C. Brown, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Kristen L. Peterson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Sean Bowen, Deputy County Attorney Bozeman, Montana

                    Submitted on Briefs: September 14, 2022

                            Decided: October 18, 2022

Filed:

                        _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      S.E. appeals the order of the Montana Eighteenth Judicial District Court, Gallatin County, committing her to the Montana State Hospital at Warm Springs for a period of up to ninety days.  We reverse.

¶2      S.E. presents the following issue for review:

*Whether the District Court committed reversible error when it overruled S.E.'s objection and allowed the professional person to testify by telephone in violation of Montana's involuntary commitment statutes?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      S.E. suffers from Bipolar I Disorder.  In August 2020, S.E. suffered a depressed episode with mood-congruent psychotic features marked by delusions and disorganized thinking.  While staying with her mother, S.E. knocked on a neighbor's door and was intent on entering, insisting it was her mother's house.  S.E. was taken to the emergency room then brought to Hope House, a mental health facility in Bozeman, due to her disorganized thinking and confusion.  The State filed a petition for S.E.'s involuntary commitment.

¶4      The District Court held an initial hearing on August 20, 2020.  At that hearing, the District Court appointed a representative of Gallatin Mental Health Center to evaluate S.E.  The State requested that the professional person "be allowed to testify remotely," to which S.E. did not object.  The District Court ordered that the professional person "may testify by video," and set the hearing on the petition for the morning of August 24, 2020.

¶5      At the hearing on the petition, the State called Amanda Torres, a licensed clinical professional counselor and certified mental health professional in Montana, to testify by

2

telephone, citing "technical difficulties with [the] courtroom" video capabilities. S.E. objected to Torres's appearance by telephone on the grounds that it violated her right to cross-examine witnesses, asserting that "the ability to effectively cross examine witnesses" depended on "the ability to see their reactions to things and for the . . . [fact-finder] to also see the witnesses." S.E. clarified she objected to a telephone appearance, but not video. She suggested rescheduling the hearing for the afternoon or next day to wait for functional video.

¶6     In response, the State asserted that it requested Torres "be allowed to appear remotely at the initial hearing," but was "fine" with moving the trial to the afternoon. The District Court found S.E.'s objection "reasonable," but nevertheless overruled it and allowed Torres to testify by telephone because "I think it's a different standard that applies where there's . . . technical issues that prevent the witness from appearing by video."

¶7     The State called Torres, its only witness, to testify by telephone. Torres testified regarding the circumstances leading to S.E.'s commitment. Torres also testified concerning her remote video evaluation of S.E. earlier that morning prior to the commitment hearing. During Torres's evaluation, S.E.'s mood was depressed, and she was confused about the circumstances surrounding her emergency detention at the Hope House. At one point, S.E. mistakenly believed she was at the Hope House because she had been speeding, and at another she incorrectly believed she was in Washington. S.E. acknowledged a previous mental health diagnosis. Torres drafted a report based on her evaluation of S.E. in which she noted S.E. did not present an imminent danger of bodily

3

harm to herself or to others. Based on her evaluation and her review of S.E.'s records, Torres believed that S.E. was suffering from Bipolar I disorder and that S.E. was experiencing a depressed episode with psychotic features marked by delusions and disorganized thinking. Torres testified that she believed S.E. was substantially unable to care for her own basic needs of safety, health, food, or shelter given that she was divorced from reality and lacked any plan to care for herself if she were released at that time. Further, Torres noted that S.E. had not improved since she was detained at the Hope House and that release at that time would place her in danger. Torres also testified that her opinion as to S.E.'s mental disorder was based on a reasonable degree of medical certainty.

¶8 S.E. testified that she wanted to go home and she could take care of herself if the petition were dismissed. She also testified that she had previously used social services for food stamps and that she knew how to access that kind of a program.

¶9 Based on the testimony presented, the District Court found that S.E. suffered from a mental disorder and required commitment. Relying on Torres's testimony, the District Court found that S.E. was substantially unable to provide for her own basic needs of health, safety, or shelter. The District Court noted that less restrictive treatment options were not available because of S.E.'s condition at the time and her refusal to take medications, though the District Court did not order S.E. be involuntary medicated. The District Court ordered that S.E. be involuntarily placed at Montana State Hospital for a period of up to ninety days.

4

**STANDARD OF REVIEW**

¶10 This Court reviews a district court's civil commitment order to determine whether the court's findings of fact are clearly erroneous and its conclusions of law are correct. *In re B.H.*, 2018 MT 282, ¶ 9, 393 Mont. 352, 430 P.3d 1006. A finding of fact is clearly erroneous only if it is not supported by substantial credible evidence, the district court misapprehended the effect of the evidence, or we have a definite and firm conviction upon review of the record that the court otherwise erred. *In re C.K.*, 2017 MT 69, ¶ 10, 387 Mont. 127, 391 P.3d 735. Strict adherence to the involuntary commitment statutory scheme is required, considering the utmost importance of the rights at stake. *In re S.D.*, 2018 MT 176, ¶ 8, 392 Mont. 116, 422 P.3d 122. We exercise de novo review when deciding questions of law such as whether the district court correctly interpreted and applied relevant statutes. *In re N.A.*, 2021 MT 228, ¶ 8, 405 Mont. 277, 495 P.3d 45 (citation omitted).

**DISCUSSION**

¶11 *Whether the District Court committed reversible error when it overruled S.E.'s objection and allowed the professional person to testify by telephone in violation of Montana's involuntary commitment statutes?*

¶12 S.E. argues that the District Court committed reversible error when it allowed Torres to testify by telephone over S.E.'s objection and contrary to the statutory mandates for ordering an involuntary commitment. The State contends that the District Court did not err in allowing Torres to appear by telephone because the involuntary commitment statutes

5

do not explicitly prohibit such testimony, and that regardless, the Montana Rules of Civil Procedure authorized Torres's testimony by telephone under the circumstances.

¶13     Title 53, chapter 21, part 1, MCA, addresses "Treatment of the Seriously Mentally Ill." In a trial or hearing on a petition for involuntary commitment, the respondent's presence is required unless waived. Section 53-21-126(1), MCA. Similarly, the court-appointed professional person must "be present for the trial and subject to cross-examination." Section 53-21-126(3), MCA. Other involuntary commitment statutes also emphasize the importance of physical presence in these proceedings. *See* § 53-21-101(4), MCA (stating the involuntary commitment statutes "ensure that due process of law is accorded any person coming under the provisions of this part"); 53-21 -115(2), (4), MCA (guaranteeing the right "to be present, to offer evidence, and to present witnesses in any proceeding concerning the person" and "to cross-examine witnesses"); § 53-21-116, MCA (titled "Right to be present at hearing or trial — assignment of counsel," and guaranteeing "[t]he person alleged to be suffering from a mental disorder and requiring commitment has the right to be present . . . at any hearing or trial"); § 53-21-119(2), MCA ("The right of the respondent to be physically present at a hearing may also be waived by the respondent's attorney and the friend of respondent with the concurrence of the professional person and the judge upon" specific factual findings).

¶14     Section 53-21-140, MCA, provides an exception to the requirement of physical presence, authorizing "the use of two-way electronic audio-video communication, allowing all of the participants to be observed and heard by all present" during hearings

6

conducted under chapter 21. Section 53-21-140(1), MCA. Specifically, § 53-21-140(3)(c), MCA, authorizes this method of communication in a hearing on an involuntary commitment petition at the court's discretion. However, two-way electronic audio-video communication "may not be used" in this hearing "if a respondent or patient, the respondent's or patient's counsel, or the professional person objects." Section 53-21-140(5)(b), MCA. "May not" is mandatory; therefore, the respondent's objection forecloses the district court's discretion to permit the professional person's testimony via two-way electronic audio-video communication. *In re N.A.*, ¶ 12 (citing *Van Der Hule v. Mukasey*, 2009 MT 20, ¶ 11, 349 Mont. 88, 217 P.3d 1019).

¶15 The District Court erred in allowing Torres to testify by telephone. The District Court's discretionary power to allow remote testimony in certain proceedings under § 53-21-140(3), MCA, is expressly limited to allowing appearances by two-way electronic audio-video communication. *See* § 53-21-140, MCA (titled "Use of two-way electronic audio-video communication"). Additionally, § 53-21-140(5), MCA, "curtails that discretion. If the respondent, patient, or their counsel objects . . . the court may not allow testimony by electronic audio-video communication." *In re N.A.*, ¶ 13. Accordingly, Torres was required to be physically present at the commitment hearing pursuant to § 53-21-126(3), MCA, unless the District Court permitted her to testify by two-way electronic audio-video communication and no parties objected to this testimony as set forth in § 53-21-140, MCA. Because the telephone lacked video capabilities as required by § 53-21-140, MCA, and S.E. objected, the District Court violated the clear statutory

7

mandates for ordering an involuntary commitment when it allowed Torres to testify by telephone.

¶16 The State contends that the District Court had the power to allow Torres to testify by telephone because the involuntary commitment statutes do not expressly prohibit a telephone appearance. However, § 53-21-140, MCA, explicitly authorizes only two-way audio-video communication. Telephones do not satisfy the requirements for this exception as they lack video capabilities. The statutes except two-way audio-video testimony under certain circumstances because the communication method can effectuate the Legislature's intent that witnesses in involuntary commitment proceedings be observed. *See* § 53-21-126(3), MCA ("The professional person appointed by the court must be present for the trial and subject to cross-examination."); § 53-21-115(4), MCA (granting to respondents "the right in any hearing to cross-examine witnesses").

¶17 We have also recognized the importance of observing witnesses. In *Bonamarte v. Bonamarte*, 263 Mont. 170, 178, 866 P.2d 1132, 1137 (1994), we held a district court's decision to allow testimony by telephone in a dissolution proceeding was reversible error. We described important benefits of in-person testimony, such as the ability to examine witness credibility and prevent witness coaching, and we noted telephone testimony can interfere with the right to cross-examine witnesses. *Bonamarte*, 263 Mont. at 175-76, 866 P.2d at 1135. We have also recognized that unlike video testimony, which allows the trier of fact to both observe and hear witnesses, "telephone testimony presents the listener with a disembodied voice and no clue as to the demeanor of the witness[.]" *City of Missoula v.*

8

*Duane*, 2015 MT 232, ¶ 20, 380 Mont. 290, 355 P.3d 729. S.E.'s objection to Torres's telephone testimony was grounded in the concern that audio-only testimony would negatively impact her right to cross-examine Torres. S.E. also noted she did not object to Torres appearing by video. Section 53-21-140, MCA, expressly authorizes only two-way audio-video communication in lieu of testifying in-person. Without two-way video capabilities, Torres's testimony could not be "observed . . . by all present," in contravention of § 53-21-140(1), MCA.

¶18 Moreover, we "firmly enforce[] the statutory requirements for involuntary commitment proceedings." *In re L.L.A.*, 2011 MT 285, ¶ 20, 362 Mont. 464, 267 P.3d 1. *See also In re C.K.*, ¶ 12. These requirements "are of critical importance because of the calamitous effect of a commitment, including loss of liberty and damage to a person's reputation." *In re Mental Health of T.J.D.*, 2002 MT 24, ¶ 20, 308 Mont. 222, 41 P.3d 323 (citations omitted); *In re B.H.*, ¶ 18. Consequently, we will reverse a district court judgment when it violates "the specific statutory mandates for ordering an involuntary commitment." *In re L.L.A.*, ¶ 20. Under this statutory scheme, a professional person must be physically present unless permitted to testify by two-way audio-video communication, without objection. Sections 53-21-126, -140, MCA. The involuntary commitment statutes contain no exception for testimony by telephone. Torres testified by telephone without video capabilities, and as such the District Court's decision violated the statutory mandates for ordering an involuntary commitment.

9

¶19 The State also asserts that the District Court's decision to allow Torres to testify by telephone satisfied M. R. Civ. P. 43(a)'s more lenient exception to open court testimony. Section 53-21-126(3), MCA, requires the professional person's physical presence and then provides that "[t]he trial is governed by the Montana Rules of Civil Procedure." The State argues this reference to the Montana Rules of Civil Procedure incorporates standards within those rules, specifically Rule 43(a). Rule 43(a) provides that "[a]t trial, the witnesses' testimony must be taken in open court unless a Montana statute . . . provide[s] otherwise. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." The State argues Torres's testimony satisfied this exception because a telephone qualifies as contemporaneous transmission from a different location. However, Rule 43(a) explicitly states that when a Montana statute "provide[s] otherwise," the statute controls. Additionally, we have recognized that where specific statutes conflict with the Montana Rules of Civil Procedure, the specific statutes govern. *See Sharp v. Eureka Town Council*, 2014 MT 216, ¶ 11, 376 Mont. 221, 331 P.3d 840; *Buck v. Buck*, 2014 MT 344, ¶ 19, 377 Mont. 393, 340 P.3d 546; *In re Estate of Spencer*, 2002 MT 304, ¶ 13, 313 Mont. 40, 59 P.3d 1160. Accordingly, the statutory provisions in Title 53, chapter 21, part 1, and more specifically, the exception to in-person testimony enumerated in § 53-21-140, MCA, govern a professional person's method of testimony in involuntary commitment proceedings.

¶20 Finally, the State argues that S.E. failed to clearly object to Torres's telephone testimony on the basis of the statutory mandates for ordering involuntary commitments, instead grounding the objection in her right to cross-examine witnesses. We held a district court committed reversible error in similar circumstances when it allowed the professional person to testify by Vision Net, a two-way electronic audio-video communication system, over the respondent's objection. *In re N.A.*, ¶¶ 4, 17, 20. In *N.A.*, we determined that while the professional person's "attendance was required both statutorily under § 53-21-126(3), MCA, and by the District Court's order setting the hearing," testifying through Vision Net "fell within the exception to the general rule allowing appearances over electronic audio-video communications." *In re N.A.*, ¶ 16. However, we noted that because the respondent objected, "the District Court was statutorily mandated to prohibit [the professional person's] testimony by Vision Net," and the failure to do so amounted to reversible error. *In re N.A.*, ¶ 19. The State argued N.A.'s objection, grounded in the Confrontation Clause, was insufficient. We explained that "we consider 'an objection sufficient if it specifies the reason for disagreement with the procedure employed by the court.'" *In re N.A.*, ¶ 17 (quoting *State v. Johns*, 2019 MT 292, ¶ 18, 398 Mont. 152, 454 P.3d 692 (citation omitted)). We concluded N.A.'s objection sufficiently identified the basis for disagreeing with the court, namely that the respondent objected to the professional person testifying by Vision Net. *In re N.A.*, ¶ 17.

¶21 S.E.'s objection was similarly clear. The State first requested that Torres be allowed to testify remotely at S.E.'s initial hearing. S.E. did not object. The District Court granted

11

the request and ordered that Torres "may testify by video," demonstrating an understanding that the State's request for a remote appearance referred to video, rather than telephone, testimony. On the day of the involuntary commitment hearing, the State called Torres to testify by telephone because of technical problems with the courtroom video. At that point, S.E. objected on the grounds that audio-only testimony impeded her ability to effectively cross-examine Torres. S.E.'s objection to testimony by telephone, and her continued agreement to video testimony, "sufficiently identified" her disagreement with the District Court and "constituted a clear objection." *See In re N.A.*, ¶ 17.

¶22    Under § 53-21-140, MCA, a district court may permit a professional person to testify remotely by two-way electronic audio-video communication. If the respondent objects, subsection (5) prohibits the use of such communication. The District Court was statutorily mandated to prohibit Torres's testimony by telephone because it did not satisfy the requirement for two-way audio-video communication and because S.E. objected. Instead, the District Court erroneously overruled S.E.'s objection.

## CONCLUSION

¶23    The District Court committed reversible error when it allowed Torres to testify by telephone over S.E.'s objection. The judgment is reversed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE

12